[Civ. No. 31610.  Second Dist., Div. Four.  Aug. 1, 1968.]

ROWLAND SCHOOL DISTRICT, Plaintiff and Appellant, v. STATE BOARD OF EDUCATION, et al., Defendants and Respondents.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Smith, Netzley & Culkins and Rodney Robertson for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Palmer and Richard L. Mayers, Deputy Attorneys General, Harold W. Kennedy, County Counsel, James W. Briggs and Raymond W. Schneider, Deputy County Counsel, for Defendants and Respondents.

BISHOP, J. pro tem.*—Our first task will be to unscramble the proceedings brought before us by plaintiff's notice that it appealed "from that certain judgment entered on or about October 13, 1966, . . . which judgment dismisses the plaintiff's complaint for injunction, plaintiff's complaint for declaratory relief and plaintiff's petition for writ of mandate, and further, which judgment purports to enter a summary judgment in favor of the defendants and against the plaintiff, and that said plaintiff does appeal from a whole of said judgment and/or judgments."

Finding no document in the record brought to us that bore any resemblance to such a judgment or judgments, we obtained the original record from the trial court and there find the judicial actions from which we conclude plaintiff may be said to have appealed.

On October 17, 1966, an "entry of dismissal" was signed by the trial judge and filed, succinctly stating: "Pursuant to the provisions of section 581d of the Code of Civil Procedure, the court having sustained the demurrer [sic] of the defendants herein to the Second Amended Complaint without leave to amend, the within action is dismissed." It will be noted that this order does not even mention a summary judgment for or against anybody. It does, however, dismiss the within action and that is an appealable judgment, inviting examination.

We begin with the second amended complaint to get an understanding of the issues involved. That pleading, filed

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

August 8, 1966, was drafted in three counts bearing, respectively, these titles: ''First Cause of Action (Declaratory Relief); Second Cause of Action (For Injunction); and Third Cause of Action (Petition for Writ of Mandamus.)'' To this pleading the county defendants filed, on August 17, a document entitled ''Demurrer of C. C. Trillingham, Benjamin S. Hite, and Roscoe Hollinger to Second Amended Complaint. . . .'' The first ground was: ''I. That the First Cause of Action of said Amended Complaint does not allege facts sufficient to constitute a cause of action against these defendants or any of them.'' This was followed by a similar statement respecting counts II and III. On August 18 defendant State Board of Education filed its ''Return by Way of Demurrer of State Board of Education to Second Amended Complaint.'' This pleading consisted of three general demurrers, one to each of the complaint's three causes of action.

Before these demurrers were ruled upon two notices were given of motions to be made. August 18, that of the State Board of Education warned of a motion to dismiss the complaint as to it and for a summary judgment in its favor, against the plaintiff. On August 22, a like motion was foretold by the three county defendants, for a summary judgment to be made in their favor.

The demurrers and motions came on for hearing September 14, and this notation appears in the court's minutes:

''Plaintiff's motion to withdraw his [sic] 3rd cause of action in the 2nd amended complaint is granted without prejudice. Motions by the County and State for summary judgment, and the demurrers by the County and State to the 1st and 2nd cause of action of the 2nd amended complaint stand submitted.''

And so they stood until September 20, when the minutes reveal the following dispositions of them. ''Demurrer of County defendants sustained on the grounds stated without leave to amend; demurrer of State defendant sustained on the grounds stated without leave to amend. . . . Because of the Court's ruling sustaining the demurrers without leave to amend, a ruling on the motions for summary judgment is unnecessary and are declared off calendar.''

With these facts furnishing the background, several problems beg for attention, the first two being these: Does either the first or second count of plaintiff's complaint state a

cause of action against either the State Board of Education or the three county officers named as defendants? The third cause of action is no longer of interest on this appeal, and the two motions for summary judgments remain "off calendar" and as no summary judgment ever came into being, the appeal with reference to them must be dismissed.

With the procedural issues clarified, we turn to consider what it is upon which the parties' attention centers. The appealing plaintiff, in the first cause of action in its second amended complaint, identifies its defendants, which are: State Board of Education; C. C. Trillingham, Superintendent of Schools of Los Angeles County, among whose duties is that of calling and giving notice of the reorganization of school districts within the county; Benjamin S. Hite, Registrar of Voters of the County; Roscoe Hollinger, the County Auditor; and the Hudson School District and Walnut School District, which districts, together with plaintiff, territorially make up the remaining defendant, the LaPuente Union High School District.

Attention is called in plaintiff's pleading to the fact that "In 1964, the Legislature . . . adopted the so-called Unruh School Act, which is commonly known as chapter 132, 1964 First Extra Session." This act added fourteen sections, and three chapters to the Education Code; amended nineteen sections and the heading of an article in that code; and repealed one section. Among the sections added to the education Code is section 3100, which reads in part: "It is the intent and purpose of the Legislature that the procedures prescribed by the provisions of this chapter . . . be utilized primarily for the formation of unified school districts maintaining grades kindergarten or 1 through 12, and that this form of organization be ultimately adopted throughout the state. It is the further intent of the Legislature that in exercising the authority to approve master plans and recommendations developed at the local level, the State Board of Education consider the boundaries of existing high school districts as the minimum geographical base for the organization of individual unified school districts, . . ."

Steps were taken to unify the school districts which are parties to this action. An election was called and held on June 17, 1966, the month following the filing of the action. The majority of voters voted "no" but as another election will be held within two years, unless the Legislature changes the

rules, plaintiff continues to be interested in the problems it sees. In its second amended complaint it puts its finger on two sections that it characterizes as unconstitutional, and it finds fault with some other things on other grounds, desiring judicial answers to its questions.

We are to be called upon to consider, therefore, plaintiff's cause of action for declaratory judgments and causes of action to enjoin further activity by the defendants, mainly based on its claim that two sections of the Education Code are unconstitutional. It is quite possible for the Legislature to authorize a school district, or any other agency or person concerned with the public welfare, to bring an action to obtain a judicial declaration that some piece of legislation is unconstitutional and to stay further steps the invalid legislation seems to authorize, even though the plaintiff has no interest in the question involved other than that of the public generally. For example, see section 17070 of the Business and Professions Code, authorizing ''any person or trade association (to) bring an action to enjoin and restrain any violation of [sections 17000-17113 of the Code.]'' It is possible, we have said, for the Legislature to have authorized this action, whether or not the plaintiff school district appears affected by the unconstitutionality it claims exists in the ''so-called Unruh School Act,'' but it has not done so. In other words, plaintiff has not stated a cause of action justifying either a declaratory judgment or an injunction unless it has alleged facts showing that it itself has an interest affected by the invalidity of the provisions it attacks. If it has such an interest, section 1002 becomes pertinent: ''In the name by which the district is designated the governing board may sue and be sued.''

Of the several points at which plaintiff finds fault with the bit of legislation ''commonly known as chapter 132, 1964 First Extra Session,'' we shall consider first the ''constitutional objection to the Unruh School Act which plaintiff'' according to its brief ''objects to most strenuously.'' In the second amended complaint we find the portion of the act referred to identified in these words: ''Further, the said reorganization law provides, under section 17676 of the Education Code, that when such a plan of reorganization is submitted to the voters, if said election fails, any component district involved in said plan of reorganization and election

which votes 'Yes,' although the over-all election fails, shall be paid an extra and additional $15 Foundation Program Support per child (ADA) in the district, from the taxpayers' funds of the State of California, notwithstanding the fact that those component districts participating in the same reorganization and election who vote 'No' are not paid any extra and additional sum. Under said law, the La Puente Union High School District, which is already a district involving the whole area to be reorganized, would be denied the equal protection of the laws if any one elementary district votes favorably to the reorganization in any of the subsequent elections to be held, and the over-all election fails to carry, since said High School District is already embraced in the over-all area, but would not receive the extra $15, whereas one elementary district which might vote 'Yes' would receive it, thereby discriminating unjustly between an elementary school district and a high school district. Similarly, said law can discriminate against one or more elementary districts.''

It is obvious that a fact essential to plaintiff's fault finding with section 17676 is that at least one of the school districts involved in an unsuccessful unification election, voted ''Yes.'' Failing that, no favoritism results; no school district receives the extra $15 per child ''from the taxpayer's funds.'' But this requisite fact appears nowhere among the facts alleged in plaintiff's pleading. Neither there, nor even in its brief, is it claimed that as a result of the 1966 election this unfair advantage came into play.

It is, of course, possible that as a result of some future election to be held by the school districts which are parties to this action, there may be one of them that votes ''Yes.'' Indeed, the plaintiff may be that one, in which event it would be the beneficiary of the provisions of section 17676 of which it now complains. Be that as it may, the uncertainties of the future may be taken into consideration by a court asked to declare the rights in question between two or more parties, and a denial of a declaratory judgment be a proper exercise of the court's discretion. Section 1061, Code of Civil Procedure declares: ''The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances.''

Our conclusion, up to this point, is that plaintiff's complaint (as twice amended) states no present cause of ac-

tion nor such an imminent situation that made it error for the trial court not to have entered a declaratory judgment.

Plaintiff was also disturbed by the fact that section 17702.2, Education Code provides "that upon the mere holding of the said election to determine whether or not the plan of reorganization will be approved by the voters, the first sixty cents (60c) of tax money of each district involved in the election will be taken from each of said districts for redistribution and equalization among the school districts involved in said reorganization plan, and that said redistribution and equalization of the first sixty cents of tax money in each district is as redistributed and equalized without the right of a hearing or protest or appeal and notwithstanding the success or failure of said election.''

For a combination of reasons we find section 17702.2 gives us no occasion to disturb the judgment "or judgments" from which plaintiff has appealed. That section deals with a legislative problem in solving which there is no constitutional reason to give the plaintiff school district an opportunity to be heard, make objections or appeal. Furthermore, as it read when the complaint found fault with it, the section contained terms different from those that have been in effect, since September of 1967. (See Stats. 1967, First Ex. Sess., ch. 1, p. 4822.) Most persuasive is the further fact that nowhere in its brief on this appeal does the plaintiff mention this section.

It is not enough to condemn the whole "Unruh School Act." There was a section 17702.2 in the Education Code before 1964, when chapter 132, 1964 First Extra Session was adopted. The silence of the brief respecting section 17702.2 is to be understood as an abandonment of the plaintiff's contention that because of that section the trial court erred in not rendering a different judgment.

The second amended complaint points the finger at other claimed weaknesses in the many amendments made to the Education Code by the act of the Legislature "commonly known as chapter 132, 1964 First Extra Session." For example, in paragraph VIII, where plaintiff is purportedly setting forth the matters which it "maintains and contends," in its cause for a declaratory judgment, we find it claiming that the defendant State Board of Education acted without weighing the recommendations of a Review Committee, as authorized and required by sections 3321-3324, of the Education Code. Here again, we have a matter deemed of enough importance to

be listed in the debatable issues of the pleading, but never mentioned in the brief. Moreover, in ruling on the demurrer back in October 1966, so shortly after the first election under the Unruh Act was held, it was not to be assumed that, before the second election was ordered, the Board of Education would not have weighed all reports that it was its duty to consider. We find no reversible error in the order sustaining the demurrer to the first cause of action in the second amended complaint.

The object of the second cause of action, to obtain a judgment enjoining action by the defendants, was based, in the pleading, upon the claimed weaknesses in the Unruh Act relied upon in the first cause of action. We quote from *McRae* v. *Superior Court* (1963) 221 Cal.App.2d 166, 173 [34 Cal.Rptr. 346, 98 A.L.R.2d 1239], one of the many observations that are made in the cases that give a guide to the answer we should give: "Likewise, 'injunction is an extraordinary power and should always be exercised with great caution' [citation], and '[i]t is almost too well settled to require citation of authority that whether injunctive relief will be granted in a given case is a matter largely within the discretion of the trial court.' [Citation.]" We find it unnecessary to consider afresh the situation already reviewed. The trial court, ruling in October of 1966, did not abuse its discretion in declining to enjoin the defendants from taking action that might be considered in the days ahead, or might be affected by legislative action that was still possible.

The purported appeal from a non-existent judgment "which purports to enter a summary judgment in favor of the defendants and against the plaintiff" is dismissed; the judgment of October 17, 1966, dismissing the action, is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.