[Civ. No. 21997. Fourth Dist., Div. Two. Oct. 14, 1981.]

ALTA LOMA SCHOOL DISTRICT et al., Plaintiffs and Appellants, v.
SAN BERNARDINO COUNTY COMMITTEE ON SCHOOL DISTRICT REORGANIZATION et al., Defendants and Appellants.

COUNSEL

Parker & Covert, Clayton H. Parker and Spencer E. Covert, Jr., for Plaintiffs and Appellants.

Alan K. Marks, County Counsel, and Leonard D. Brinley, Deputy County Counsel, for Defendants and Appellants.

OPINION

TAMURA, J.—The San Bernardino County Committee on School District Reorganization (county committee) formulated and recommended a reorganization plan for Chaffey Joint Union High School District (Chaffey District) which would divide the territory of the district into three separate unified school districts. Chaffey District and five of its

component districts which would go out of existence upon effectuation of the reorganization plan sought a writ of mandate to set aside the county committee's action and to prohibit the county committee and the county superintendent of schools (defendants) from transmitting the plan to the State Board of Education for its approval.

The county committee began discussing and conducting hearings on a reorganization plan for Chaffey District as early as September 1978. On March 21, 1979, following public hearings, the county committee approved a reorganization plan which would divide the territory of Chaffey District into three unified school districts. Plaintiffs' petition for a writ of mandate assailed the validity of the plan for its alleged failure to meet the statutory criteria prescribed by Education Code section 4200,[1] the county committee's failure to comply with the California Environmental Quality Act (CEQA), claimed procedural irregularities in the conduct of the public hearings, and an alleged lack of a majority vote of the members of the county committee. Plaintiffs alleged that at the final public hearing at which the plan was approved, interested persons were prevented from addressing the committee despite the fact that substantial changes in the plan were considered and made at that meeting. Plaintiffs also alleged that while six of the eleven-member committee voted for approval of the plan, two of the six who voted for approval had not attended all of the public hearings on the plan.

---

[1]Unless otherwise indicated, all section references in this opinion are to the Education Code.

Section 4200 provides: "It is the intent and purpose of the Legislature that the procedures prescribed by the provisions of this chapter and Article 2 (commencing with Section 4240) of this chapter be utilized primarily for the formation of unified school districts, and that this form of organization be ultimately adopted throughout the state. It is the further intent of the Legislature that in exercising the authority to approve master plans and plans and recommendations developed at the local level, the State Board of Education consider the boundaries of existing high school districts as the minimum geographical base for the organization of individual unified school districts, to be deviated from only in exceptional situations. The State Board of Education may approve proposals for the formation of districts based upon the division of the territory of existing high school districts, provided that the board has determined, with respect to the proposal and the resulting new districts that the following conditions are substantially met: "(a) That the new districts will be adequate in terms of number of pupils enrolled.

"(b) That the new districts will be adequate in terms of financial ability. For purposes of determining financial ability, consideration shall be given to revenue limits per pupil, assessed valuation per pupil, and tax rates. The board may give such consideration as it deems appropriate to federal funds received by a school district under the act of Congress entitled 'An act to provide financial assistance for local educational agencies in areas affected by federal activities, and for other purposes,' approved Sep-

Defendants demurred on the following grounds: (1) Plaintiffs lacked standing to sue; (2) the state was an indispensable party; and (3) plaintiffs failed to exhaust their administrative remedies. Defendants also filed an answer raising substantially the same defenses.

The cause was submitted for decision on the pleadings and various declarations which were received in evidence by stipulation of counsel. In a memorandum of intended decision, the judge rejected the defenses of lack of standing and failure to join the state as an indispensable party. However, the court upheld the defense based on the doctrine of exhaustion of administrative remedies except as to the cause of action grounded on the alleged failure to comply with CEQA. The judge ruled that the plan was a "project" within the meaning of CEQA, that the county committee was the "lead agency" with the primary responsibility for complying with CEQA, and that plaintiffs had exhausted their administrative remedies on that issue. Accordingly, the court overruled the demurrer, directed the issuance of a peremptory writ of mandate commanding defendants to vacate their approval of the reorganization plan "until they have complied with the requirements of [CEQA]," and ordered judgment for defendants on the remaining causes of action because of plaintiffs' failure to exhaust their administrative remedies.

Defendants appeal from the judgment, contending (1) plaintiffs lacked standing to maintain the action; (2) the State Board of Education was an indispensable party; (3) CEQA does not apply to the formulation and approval of a reorganization plan by the county commit-

---

tember 30, 1950 (Public Law 874—81st Congress) or under any similar act of Congress.

"(c) That the new districts are each organized on the basis of a substantial community identity.

"(d) That the proposal will result in an equitable division of property and facilities of the original district.

"(e) That the proposal and the formation of the new districts will not promote racial or ethnic discrimination or segregation. The State Board of Education may secure the advice and assistance of any other public agencies concerned with intergroup relationships for purposes of making determinations under this subdivision.

"The State Board of Education may waive the criteria specified in subdivisions (a) through (e) of this section and may approve a proposal for the formation of two or more unified school districts from the territory of a high school district if the board determines the circumstances with respect to the proposals provide an exceptional situation sufficient to justify approval of the proposals.

"The State Board of Education shall adopt rules and regulations to carry out the intent of this section."

tee; and (4) the failure to exhaust administrative remedies was a valid defense to the entire action. Plaintiffs have cross-appealed contending that the doctrine of exhaustion of administrative remedies does not preclude them from maintaining the instant action.

I

■ Defendants' contention that plaintiffs lacked standing to bring the instant proceeding is without merit. The standing argument is premised on the legal proposition that, subject only to constitutional restrictions, the power of the Legislature over school districts is plenary (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 180-181 [302 P.2d 574]), and it "may divide, change, or abolish them at pleasure." (*Pass School Dist.* v. *Hollywood Dist.* (1908) 156 Cal. 416, 418 [105 P. 122]; *Merrill etc. School Dist.* v. *Rapose* (1954) 125 Cal.App.2d 819, 820 [271 P.2d 522].) The foregoing legal proposition, however, only means that a school district has no vested right in its own continued existence and may not challenge the basic power of the Legislature over the creation, alteration, or abolition of a school district. (*San Carlos Sch. Dist.* v. *State Bd. of Education* (1968) 258 Cal.App.2d 317, 322 [65 Cal.Rptr. 711].) It does not mean that a school district does not have standing to litigate the constitutionality of the means selected by the Legislature for the district's abolition (*id.*, at p. 322) or to have adjudicated the district's complaint that the procedures prescribed by the Legislature for the reorganization of a school district are not being observed by the administrative body empowered to conduct the proceedings. Plaintiffs are not questioning the power of the Legislature to provide for the reorganization of school districts. They are seeking to compel the county committee to follow the procedural and substantive rules prescribed by the Legislature for the formulation and recommendation of a reorganization plan. We are satisfied that the districts have standing to invoke the aid of the courts to compel compliance with the statutory procedures which may lead to their eventual abolition.

An application for a writ of mandate (Code Civ. Proc., § 1086) or writ of review (Code Civ. Proc., § 1069) must be brought by "the party beneficially interested." Ordinarily, the writ will be granted only where necessary to protect a substantial right and when it is shown that some substantial damage will be suffered if the writ is denied. (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].) An exception is recognized, however, where the question is one of public right and the

object of the writ is to procure performance of a public duty. (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256]; *Hollman* v. *Warren* (1948) 32 Cal.2d 351, 357 [196 P.2d 562]; *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 98, 100-101 [162 P.2d 627]; *Fuller* v. *San Bernardino Valley Mun. Wat. Dist.* (1966) 242 Cal.App.2d 52, 57 [51 Cal.Rptr. 120].) In *Jefferson Union Sch. Dist.* v. *City Council* (1954) 129 Cal.App.2d 264 [277 P.2d 104], a school district was held to have a sufficient beneficial interest to bring a mandamus proceeding to test the validity of a city's annexation of a part of the territory of a school district where annexation would result in the exclusion of the territory from the school district. The reviewing court observed that if the city council lacked jurisdiction to proceed, it was "very much to the interest of the school district to obtain an early determination to avoid the confusion and loss of revenue that otherwise might ensue." (*Id.*, at p. 267.)

Defendants' reliance on *Rowland School Dist.* v. *State Bd. of Education* (1968) 264 Cal.App.2d 589, 593 [70 Cal.Rptr. 504], is misplaced. In *Rowland* the school district sought declaratory relief to adjudicate the constitutionality of a possible future reorganization of a school district. The case was resolved not on the issue of standing, but on the ground that the only facts alleged concerned the constitutionality of possible future legislative and administrative actions.

## II

■ Defendants' contention that the State of California or the State Board of Education was an indispensable party defendant is likewise lacking in merit.

Code of Civil Procedure section 389 was amended in 1971 to conform to rule 19 of the Federal Rules of Civil Procedure. (*Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 364-365 [140 Cal.Rptr. 744]; Law Revision Com. com. to Code Civ. Proc., § 389; 14 West's Ann. Cal. Codes 221, 221-223.) The section provides that there shall be joinder of a party (1) if in his absence complete relief cannot be accorded among those who were already parties or (2) if he claims an interest in the subject matter of the action. In addition, although some courts held that under former Code of Civil Procedure section 389, absence of an indispensable party deprived the court of jurisdiction over the subject matter, under the section as amended, failure to join a party regarded as "indispensable" is "not . . . a jurisdictional defect in the

technical sense." (*Kraus* v. *Willow Park Public Golf Course, supra*, 73 Cal.App.3d 354, 368.) Although the court has no jurisdiction over the absent party, the court has jurisdiction over the existing parties and has the power to render a judgment affecting their rights. (*Id.*, p. 368; see 3 Witkin, Cal. Procedure (1981 Supp.) §§ 160B-160C, pp. 45-48.)

In the case at bench, the challenged administrative action is that of the county committee, not the State Board of Education. Nor is the state asserting an interest in the subject of this action. Assuming that the action is otherwise maintainable, there is no reason why complete relief could not be accorded among the parties before the court without joining the state. Accordingly, the contention that the court lacked jurisdiction because the state was not joined as a party defendant is without merit.

## III

We turn to plaintiffs' cause of action predicated on CEQA. The trial court determined that the proposal was a project within the meaning of CEQA, that the county committee was the "lead agency" responsible for the preparation of an environmental impact report (EIR) or the adoption of a negative declaration, and that plaintiffs had exhausted their administrative remedies on this issue.

Defendants contend that approval of a reorganization plan for submission to the voters is not a project covered by CEQA because section 15037 of the guidelines for implementation of the act promulgated by the Secretary for Resources specifically provides that the term "project" does not include: "(4) The submittal of a proposal to a vote of the people of the State or of a particular community." (Cal. Admin. Code, tit. 14, § 15037.)[2] Defendants further contend that even if CEQA applies, the State Board of Education, not the county committee, would be the lead agency under the provisions of Public Resources Code sections 21067 and 21069 and sections 15064 and 15065 of title 14 of the California Administrative Code. Finally, defendants urge that plaintiffs have not exhausted their administrative remedies on the CEQA issue.

---

[2]The question whether a school district unification plan is a "project" subject to CEQA was one of the issues involved in *Fullerton Joint Union High School Dist.* v. *State Bd. of Education*\* (Cal.App.), decided by this court, but a hearing has been granted by our Supreme Court and the matter is presently pending in that court.

\*Reporter's Note: Hearing granted, for Supreme Court opinion see 32 Cal. 3d 779 [187 Cal. Rptr. 398, 654 P. 2d 658].

The CEQA issue is not ripe for judicial review because, as we explain in the next section of this opinion, plaintiffs are improperly seeking judicial review of an interlocutory administrative decision without pursuing the administrative process to a final decision on the merits. The county committee's approval and recommendation of a reorganization plan is only the initial step in the administrative process.

## IV

Finally, we address plaintiffs' contention that the trial court erred in determining that they were precluded from seeking judicial review of the county committee's action (except as to the CEQA issue) because they failed to exhaust their administrative remedies.

Resolution of the issue requires a brief review of the pertinent statutes relating to school district reorganization and unification. The county committee conducted its proceedings pursuant to section 4200 et seq. and section 35500 et seq. which require each county committee to study school district organization in the county and to formulate plans and recommendations for the unification or other reorganization of the districts under the direction of the State Board of Education (State Board) (§ 4320.) Any proposed plan approved by the county committee must be transmitted to the State Board and approved by it before the plan may be submitted to the electorate. (§§ 4325, 4401, 4402.) When a county committee's proposal has been transmitted to the State Board, the executive officer is required to have the plan reviewed, analyzed and reported upon by the state department and to set the proposal for a public hearing before the State Board. (Cal. Admin. Code, tit. 5, § 18570.) At the time and place set for the hearing the State Board is required to consider oral and written arguments on the proposal and the analysis and recommendations of the State Department of Education. (Cal. Admin. Code, tit. 5, §§ 18571, 18572.) The State Board is authorized to approve the proposal if it determines that the statutory criteria have been met.

In 1980, the Legislature added chapters 3 and 4 to part 21 of the Education Code (§ 35500 et seq.) for the purpose of providing a uniform procedure for various types of school district reorganization proceedings. (Stats. 1980, ch. 1192.) Insofar as the procedures governing the formulation of a unification or reorganization plan by a county committee and its submission to and approval by the State Board are concerned, the requirements of the 1980 statutes are substantially the

same as the earlier provisions of the Education Code. The new statute, however, expressly provides for notice and hearing by the State Board and for the consideration of the findings and recommendations of the Superintendent of Public Instruction (§§ 35752-35754) whereas those matters were formerly dealt with by administrative regulations. The new statute also provides that "[i]f the board approves the formation [of the school district], it may *amend* or *include* in the proposal any of the appropriate provisions of article 3 (commencing with Section 35730)." (§ 35754; italics supplied.)

The 1980 statute expressly provides that "[o]n or after January 1, 1981," its provisions shall apply to reorganization of school districts. (§ 35501.) The question has been raised whether the 1980 statute would govern the future course of the instant reorganization proceedings. This issue is pertinent because it has a bearing on the applicability of the doctrine of exhaustion of administrative remedies.

■ Plaintiffs argue that the new law empowering the State Board to modify certain elements of the reorganization plan is substantive rather than procedural in nature and therefore should not be applicable to the instant reorganization proceedings or be considered in determining whether plaintiffs have an adequate administrative remedy. We disagree. Although the reorganization proceedings in question commenced before the effective date of the new statute, we are satisfied that the new provisions govern the future course of the proceedings.

A statute effecting a change in "procedure" or "remedy" may be applied to pending proceedings without violating the rule of presumed retroactivity (*Norton* v. *City of Pomona* (1935) 5 Cal.2d 54, 65-66 [53 P.2d 952]), but a statute affecting a substantive right will not be given retrospective application unless a legislative intent that it be so applied is clearly expressed. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865].) The rule against giving a statute retroactive effect unless the intent to do so is clearly expressed is, however, subordinate to the more fundamental rule of construction that a statute should be interpreted to effectuate the legislative intent. (*Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 687 [91 Cal.Rptr. 585, 478 P.2d 17]; *Coast Bank* v. *Holmes* (1971) 19 Cal. App.3d 581, 595 [97 Cal.Rptr. 30].) Assuming that the new provisions concerning the power of the State Board to modify a recommended plan be deemed substantive in nature rather than procedural, in view of the broad powers which had previously been granted to

the State Board, the new provision may be viewed as a codification of the board's former implied power. In any event, the express legislative direction that on and after January 1, 1981, the provisions of the new law shall apply and the provisions of the earlier law "shall not apply to an action to reorganize school districts" (§ 35501) indicates a legislative intention that the new law should govern the completion of pending reorganization proceedings. Since a school district has no vested right in its continued existence, the application of the new statute to the instant proceedings would not impair any vested right or violate any constitutional guarantee.

■ With the foregoing legislative background in mind we turn to the issue of exhaustion of administrative remedies. It is a well-recognized rule in this state that if an administrative remedy is provided by statute, relief must be sought from the administrative body and such remedy must be exhausted before judicial review of the administrative action is available. (*Ralph's Chrysler-Plymouth* v. *New Car Dealers Policy & Appeals Bd.* (1973) 8 Cal.3d 792, 794 [106 Cal.Rptr. 169, 505 P.2d 1009]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 543 [63 Cal.Rptr. 21, 432 P.2d 717]; *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292-293 [109 P.2d 942, 132 A.L.R. 715].) The rule is not a matter of discretion; compliance is a jurisdictional prerequisite to judicial review. (*Alexander* v. *State Personnel Bd.* (1943) 22 Cal.2d 198, 200 [137 P.2d 433]; *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280, 293.)

The exhaustion doctrine precludes review of an intermediate or interlocutory action of an administrative agency. (3 Davis, Administrative Law Treatise, § 20.05, pp. 81-91; 1970 supp., § 20.05, pp. 655-661.) A party must proceed through the full administrative process "to a final decision on the merits." (*La Costa Beach Homeowners Assn.* v. *Wayne* (1979) 89 Cal.App.3d 327, 330 [152 Cal.Rptr. 355]; *McHugh* v. *County of Santa Cruz* (1973) 33 Cal.App.3d 533, 539 [109 Cal.Rptr. 149].) This aspect of the exhaustion doctrine is analogous to the one final judgment rule in judicial proceedings. (3 Davis, *supra,* at p. 87.) It was succinctly expressed in *McPheeters* v. *Board of Medical Examiners* (1947) 82 Cal.App.2d 709 [187 P.2d 116], where the court stated: "It will be noted that the writ of mandate is sought for the purpose of reviewing an intermediate step in the administrative process, and was sought before the statewide administrative board had acted on the merits. The attorney general contends that such writ cannot be used to review administrative action until the board has acted on the merits.

Certainly, each step in the administrative proceeding cannot be reviewed separately, any more than each ruling in the trial of a civil action may be separately reviewed by a separate appeal. Administrative proceedings should be completed before the issuance of a judicial writ. An exception, of course, appears when the administrative board is without jurisdiction." (*Id.*, at p. 717; see, e.g., *Long Island Rail Road Company* v. *United States* (E.D.N.Y. 1961) 193 F.Supp. 795, 797-800.)[3] Another exception exists where the administrative agency has made it clear it would be futile to pursue the administrative process to conclusion. (*Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 499 [129 Cal.Rptr. 893].) A still further well-recognized exception lies where irreparable harm will result if judicial intervention is withheld until a final administrative decision is rendered. (See *United States* v. *Superior Court* (1941) 19 Cal.2d 189, 196-197 [120 P.2d 26]; 3 Davis, *supra*, § 20.05, pp. 86-87.)

■ In the case at bench, the county committee's proposal must still be heard by the State Board and approved or disapproved by that body before the administrative process is completed. Plaintiffs' attack on the recommended plan on the ground it fails to comply with some of the statutory conditions of a reorganization plan is a matter which is expressly made cognizable by the State Board. Moreover, under the new statute the board is given the power, not only to approve or disapprove a plan, but to modify or amend it if it decides to approve it.

Plaintiffs contend that their charges that the county committee failed to hold proper public hearings and that its decision lacked a majority vote of the membership of the county committee are matters over which the State Board lacks jurisdiction and that therefore there are no avail-

---

[3]In a recent comment in the Columbia Law Review, the author pointed out that "[u]nder the exhaustion doctrine participants in agency proceedings must avail themselves of all administrative procedures before seeking judicial review of adverse decisions. Exhaustion issues typically arise when review is sought prematurely, . . ." (Comment, *The Exhaustion Doctrine and NEPA Claims* (1979) 79 Colum.L.Rev. 385, 385-386; fns. omitted.) The commentator also noted that "[t]he unifying question in all exhaustion cases is whether a court should grant review of a claim that an agency has not had a full opportunity to resolve," (*id.*, at p. 386 citing the principal purposes of exhaustion requirements set out in *McKart* v. *United States* (1969) 395 U.S. 185, 193-194 [23 L.Ed.2d 194, 202-203, 89 S.Ct. 1657]: avoidance of premature interruption of administrative processes; allowing an agency to develop the necessary factual background of the case; letting the agency apply its expertise and exercise its statutory discretion; administrative efficiency and judicial economy. (Accord: *Weinberger* v. *Salfi* (1975) 422 U.S. 749, 765 [45 L.Ed.2d 522, 538-539, 95 S.Ct. 2457]; *Parisi* v. *Davidson* (1972) 405 U.S. 34, 37-38 [31 L.Ed.2d 17, 24-25, 92 S.Ct. 815].)

able administrative remedies as to those grievances. This contention must also be rejected. It lies within the power of the administrative agency to determine in the first instance and before judicial relief may be obtained whether a given controversy falls within its granted jurisdiction. (*United States* v. *Superior Court, supra,* 19 Cal.2d 189, 195; *Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533]; *Woodard* v. *Broadway Fed. S. & L. Assn.* (1952) 111 Cal.App.2d 218, 221 [244 P.2d 467].) Whether the alleged procedural defects in the county committee's proceedings occurred and, if so, whether the proposed reorganization plan should be disapproved are matters which come within the jurisdiction of the State Board and are decisions which should be made in the first instance by the State Board. The same is true of the CEQA issue. The State Board has wide discretion in determining whether or not a proposed reorganization plan should be approved. The State Board "*may* approve proposals" if it determines that the statutory conditions are met (§ 35753; italics supplied) and after hearing "shall approve or disapprove" the formation of the proposed new district (§ 35754). In deciding whether to approve or disapprove, the State Board undoubtedly has jurisdiction to pass upon the claimed procedural irregularities before the county committee as well as the CEQA issue. Exhaustion of administrative remedies in the present context may well obviate the need for judicial review thereby serving one of the primary purposes of the doctrine, the promotion of judicial economy. (*South Coast Regional Commission* v. *Gordon* (1977) 18 Cal.3d 832, 838 [135 Cal.Rptr. 781, 558 P.2d 867].) Application of the doctrine will also serve another important policy objective of the exhaustion requirement should judicial review of the final administrative action be necessary, that of affording the parties and the courts the benefit of the expertise and experience of the administrative agency. (*Weinberger* v. *Salfi, supra,* 422 U.S. 749, 765 [45 L.Ed.2d 522, 538-539]; *McKart* v. *United States, supra,* 395 U.S. 185.) The court would have the benefit of the views of those having expertise in matters of school district reorganization, including the analysis and recommendations of the State Department of Education.

There has been no showing that this case comes within any of the exceptions to the exhaustion doctrine. Plaintiffs have not shown that they will suffer irreparable injury if they are required to await final administrative action by the State Board or that pursuit of their grievances through the State Board would be an exercise in futility. Plaintiffs are therefore precluded from maintaining the instant action until there has been a final administrative decision by the State Board.

## DISPOSITION

Judgment is reversed with directions to enter judgment dismissing the action.

Gardner, P. J., and Morris, J., concurred.