Filed 4/14/14  Holliday v. City of Buena Park CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEVE HOLLIDAY et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CITY OF BUENA PARK,<br><br>    Defendant and Respondent. | G048411<br><br>(Super. Ct. No. 30-2012-00576718)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed.

Lackie, Dammeier & McGill, Christopher L. Gaspard; Law Office of Michael A. Morguess and Michael A. Morguess for Plaintiffs and Appellants.

Liebert Cassidy Whitmore, Mark H. Meyerhoff and Connie C. Almond for Defendant and Respondent.

\*          \*          \*

## INTRODUCTION

Plaintiffs Steve Holliday and Kevin Shea (plaintiffs) filed a second amended complaint against defendant City of Buena Park (the City), containing claims for retaliation in violation of the Meyers-Milias-Brown Act (MMBA) (Gov. Code, § 3500 et seq.) and retaliation in violation of Labor Code section 1102.5. The trial court sustained the City's demurrer to the complaint on the ground plaintiffs failed to exhaust internal administrative remedies.

We affirm. As we explain in detail *post*, and as previously determined by Federal District Court Judge James V. Selna in a detailed minute order dismissing plaintiffs' claims without prejudice, plaintiffs' claims were subject to the grievance procedure required by their organizational unit's governing memorandum of understanding (the MOU). Plaintiffs did not submit their claims to the grievance procedure. They did not exhaust their internal administrative remedies or plead any exception to the exhaustion of internal administrative remedies requirement. Plaintiffs neither sought leave in the trial court to further amend the second amended complaint, nor do they seek leave to amend in this court.

## BACKGROUND

### I.

#### PLAINTIFFS FILE COMPLAINT IN THE SUPERIOR COURT; THE ACTION IS REMOVED TO FEDERAL COURT.

In October 2011, plaintiffs filed a complaint against, inter alia, the City in the superior court, a copy of which is not included in our appellate record. The complaint contained claims based on both state and federal law. In December 2011, the City successfully removed the case to the federal district court.

## II.

PLAINTIFFS FILE A SECOND AMENDED COMPLAINT IN FEDERAL DISTRICT COURT;
SUMMARY OF PLAINTIFFS' ALLEGATIONS

Plaintiffs filed a second amended complaint in the federal district court (the federal court complaint), which contained claims for retaliation for exercising their rights under the First Amendment to the United States Constitution (42 U.S.C. § 1983); retaliation in violation of the Fair Labor Standards Act of 1938 (29 U.S.C. § 215); violation of the MMBA; violation of the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.); violation of Labor Code section 1102; and violation of Labor Code section 1102.5.

Plaintiffs' claims were based on the following allegations. Plaintiffs were both police lieutenants with the City's police department when they became politically active in their union, the Buena Park Police Association (Association). The Association was the recognized bargaining unit for all sworn classifications working in the City's police department, with the exception of the position of the chief of police. At some point in time, certain Association members—apparently "management employees" within the bargaining unit—determined it would be in their interests to be represented separately from the rest of the bargaining unit on certain unspecified issues. Plaintiffs, along with then Captain Sianez and Lieutenants Robin Sells, Rich Forsyth, and Gary Worrall, were considered management employees.

Plaintiffs opposed efforts to separate the management employees from the rest of the bargaining unit and sought an election by the Association's members on the issue (i.e., plaintiffs supported the "merger"). The federal court complaint alleged that at that time, Sianez, who aspired to succeed Tom Monson as the chief of police upon his imminent retirement, "vehemently opposed the merger [of management and nonmanagement employees for bargaining purposes] and expressed his disdain for such

3

action." According to the federal court complaint, Sianez explained that "merg[ing]" management employees' representation with the rank-and-file members of the Association would make Sianez "look weak to City Hall." Sianez allegedly stated there were promotions to the captain position that would be available in the "next few months" and that it would "not look good" for those who voted to merge.

Plaintiffs further alleged that they disclosed to the Association's members that Sianez, in his capacity as the potential chief of police, threatened fellow members of the Association that he would use his power as chief against them, and that such conduct presented a potential conflict of interest. At plaintiffs' urging, the management employees in the Association voted in favor of merging with the Association for labor matters. Those in favor of the merger included plaintiffs, Forsyth, and Worrall. Sianez and Sells voted against it.

Plaintiffs asserted that Sianez thereafter began to treat them differently. Plaintiffs both pursued a promotion to the rank of captain. They alleged: Notwithstanding that they were both highly qualified, Holliday was ranked "third" in line for the promotion and Shea "failed" the process. Sells, who had supported Sianez's position on the merger, was promoted to captain by Monson and Sianez. After Worrall learned that there was another captain position open, he "changed his vote" on the merger issue to "[e]nsure his promotion to Captain." Sianez and Monson gave Holliday a "lesser evaluation"; Sianez told Holliday that Holliday's labor and political activities were a reason for the lesser evaluation. Plaintiffs also alleged in the federal court complaint, they "have taken all necessary steps to perfect this action, including exhausting any and all appropriate and/or viable administrative remedies. To that end, Plaintiffs ha[ve] filed a claim for damages pursuant to Cal. Gov't Code §§ 910, et seq. This claim was rejected."

4

III.

ON THE GROUND PLAINTIFFS FAILED TO EXHAUST INTERNAL ADMINISTRATIVE
REMEDIES, THE FEDERAL DISTRICT COURT DISMISSES PLAINTIFFS' FEDERAL CLAIMS
AND POBRA CLAIM WITH PREJUDICE, AND DISMISSES THE MMBA AND LABOR CODE
VIOLATION CLAIMS WITHOUT PREJUDICE.

In May 2012, the federal district court granted the City, Sianez, and Monson's motion to dismiss the federal court complaint. The court dismissed plaintiffs' First Amendment retaliation claim, Fair Labor Standards Act of 1838 retaliation claim, and the POBRA claim with prejudice. The court dismissed without prejudice plaintiffs' claims for violations of the MMBA and Labor Code sections 1102 and 1102.5, on the ground plaintiffs failed to exhaust the internal administrative remedies articulated in the MOU between the City and the Association.

IV.

PLAINTIFFS FILE AN AMENDED COMPLAINT IN THE TRIAL COURT; THE
TRIAL COURT SUSTAINS THE CITY'S DEMURRER WITH LEAVE TO AMEND;
PLAINTIFFS FILE A SECOND AMENDED COMPLAINT.

Plaintiffs filed a complaint against the City and a first amended complaint in the trial court, neither of which is included in our appellate record. The City demurred to the first amended complaint. The trial court sustained the demurrer as to two causes of action in the amended complaint (which, according to the respondent's brief, were plaintiffs' claims for retaliation in violation of the MMBA and for violation of Labor Code section 1102.5), on the ground plaintiffs failed to exhaust their internal administrative remedies.

The trial court also sustained the demurrer as to the "second cause of action" (which was for violation of Labor Code section 1102.5, according to the respondent's brief), based on plaintiffs' failure to exhaust external administrative

5

remedies. The court's order provided plaintiffs 10 days' leave to file a second amended complaint.

Plaintiffs filed a second amended complaint which contained one cause of action for retaliation in violation of the MMBA and one cause of action for retaliation in violation of Labor Code section 1102.5. The second amended complaint contained the same allegations as in the federal court complaint, as summarized *ante*.

In addition, the second amended complaint alleged Sianez also told Shea that he would not give him the necessary approval to attend a prestigious three-month FBI National Academy program in Virginia unless Shea pledged his absolute loyalty to Sianez. The second amended complaint also contained allegations addressing the exhaustion of administrative remedies issue, which were not included in the federal court complaint. It alleged: "Association President Dave Martinez ('Martinez'), on behalf of Plaintiffs, met with Chief Sianez and Deputy City Manager Jim Vanderpool to discuss the Plaintiffs' complaints. In or about November or December of 2010, Martinez sent a city wide email that discussed the impropriety of the promotional process for the Captain position. Martinez even separately spoke with Mayor Fred Smith, Councilmember Miller Oh, and Director of Human Resources Eddie Fenton regarding the impropriety of the promotional process for the Captain position. Mayor Smith told Martinez, 'there's nothing you can do about this.'" The second amended complaint further alleged: "Plaintiff Holliday on different occasions met with a member of the City Council, City Manager Rick Warsinski, and Sianez in an attempt to put the City on notice of the Plaintiffs' claims and resolve this matter informally. Holliday additionally met with Warsinski and Sianez several times in vain to voice his concerns. Plaintiff Shea also discussed Plaintiffs' complaints with a Councilmember. Plaintiffs were never given any further direction from the City regarding any further internal remedy, and Defendant failed to investigate the claims presented by Plaintiffs."

The City filed a demurrer to the second amended complaint, asserting that the demurrer should be sustained without leave to amend as to both causes of action because plaintiffs had not exhausted their internal administrative remedies. The City also asserted the demurrer should be sustained without leave to amend as to the cause of action for retaliation in violation of Labor Code section 1102.5, on the additional grounds plaintiffs had not (1) exhausted their external administrative remedies with the California Labor Commissioner, (2) complied with the claims presentation requirements of the California Tort Claims Act, and (3) stated facts sufficient to constitute a cause of action because plaintiffs had not engaged in any protected activity.

V.

THE TRIAL COURT SUSTAINS THE DEMURRER; PLAINTIFFS APPEAL.

The trial court sustained the demurrer to the second amended complaint. As to the cause of action for retaliation in violation of the MMBA, the demurrer was sustained without leave to amend. As to the cause of action for retaliation in violation of Labor Code section 1102.5, the demurrer was sustained with 10 days' leave to amend. Plaintiffs did not thereafter file an amended pleading. The court dismissed the action and entered judgment in favor of the City.

Plaintiffs appealed.

DISCUSSION

I.

STANDARD OF REVIEW

"We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be

7

inferred from those expressly pleaded, and matters of which judicial notice has been taken. [Citation.] We construe the pleading in a reasonable manner and read the allegations in context. [Citation.] 'We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]' [Citation.]" (*Entezampour v. North Orange County Community College Dist.* (2010) 190 Cal.App.4th 832, 837.)

"Where a demurrer is sustained without leave to amend, the reviewing court must determine whether the trial court abused its discretion in doing so. [Citation.] It is an abuse of discretion to deny leave to amend if there is a reasonable possibility that the pleading can be cured by amendment. [Citation.] Regardless of whether a request therefore was made, unless the complaint shows on its face that it is incapable of amendment, denial of leave to amend constitutes an abuse of discretion. [Citation.] The burden is on the plaintiff to demonstrate how he or she can amend the complaint. It is not up to the judge to figure that out. [Citation.] Plaintiff can make this showing in the first instance to the appellate court. [Citation.]" (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322.)

II.

PLAINTIFFS' CLAIMS WERE SUBJECT TO THE GRIEVANCE PROCEDURE SET FORTH IN THE MOU; PLAINTIFFS FAILED TO EXHAUST THEIR INTERNAL ADMINISTRATIVE REMEDIES BY FAILING TO FOLLOW THE MOU'S GRIEVANCE PROCEDURE.

The City contended in its demurrer that both of plaintiffs' claims fail because plaintiffs had not and could not allege they exhausted the internal administrative remedies set forth in the MOU between the City and the Association. "In general, a party must exhaust administrative remedies before resorting to the courts. [Citations.] Under this rule, an administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.'" (*Coachella Valley Mosquito &*

8

*Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 (*Coachella*).)

Here, the trial court granted the City's request that the court take judicial notice of, inter alia, the MOU in support of the demurrer. Plaintiffs do not challenge the court's ruling on the City's request for judicial notice in this appeal.

The MOU states that "a grievance shall be considered as any matter for which appeal is not provided for concerning a dispute about the interpretation or application of any ordinance, rule or regulation governing personnel practices or working conditions." Federal District Court Judge Selna, in a detailed order granting the motion to dismiss the federal court complaint, concluded that the claims at issue fell within the grievance procedure, stating in part, as follows: "In the first cause of action, Plaintiffs claim that [the City] violated the MMBA when it failed to promote them and gave Holliday a lower performance evaluation than he had received previously because of Plaintiffs' statements and vote during an Association meeting. . . . Finally, regarding the third cause of action, California Labor Code section 1102.5 states, in part, that an employer 'may not retaliate against an employee for disclosing information to a government or law enforcement agency,' where the employee reasonably believes the information discloses a state or federal law violation. [Citation.] To the extent that Plaintiffs allege facts to support this claim, Plaintiffs assert that [the City], through its Police Chief, retaliated against them for disclosing a 'possible conflict of interest between the potential chief of police [Sianez] making threats to fellow [A]ssociation members and using his impending power against them.'. . . [¶] All three causes of action involve an alleged abuse of power in the Department and constitute a 'grievance' within the meaning of the M[OU]. Central to Plaintiffs' complaint is the allegation that Si[a]n[e]z, acting on behalf of [the City], unlawfully abused his power in failing to promote Holliday."

As Judge Selna explained, the City's Municipal Code section 2.24.020 provides that: "No one who holds, or who is seeking . . . appointment to any office or employment in the city shall, directly or indirectly, use, promise, threaten or attempt to use any office, authority or influence, whether then possessed or merely anticipated, to . . . aid or obstruct any individual person in securing, or to prevent any individual person from securing, any position, . . . [or] promotion, . . . upon consideration or condition that the vote or political influence or action of such person . . . shall be given or used on behalf of, or withheld from, any candidate, officer or party, or upon any other corrupt condition or consideration." Judge Selna noted that section 2.20.150 of the City's Municipal Code further provides that "[n]o person in the competitive service system . . . shall be . . . discriminated against because of political opinions or affiliations." He concluded: "Thus, [the City]'s Municipal Code governs Plaintiffs' claims that they were discriminated against based on the political opinions they expressed in the Association meeting. Accordingly, the Department's failure to abide by [the City]'s Municipal Code in this personnel matter is a 'grievance' within the meaning of the M[OU]."

Judge Selna further stated in his minute order: "Additionally [the City]'s Personnel Rules and Regulations provide that promotional examinations, 'shall be impartial, of a practical nature and shall relate to those subjects which . . . fairly measure the relative capacities of the persons examined to execute the duties and responsibilities of the class to which they seek to be appointed.'. . . Thus, [the City]'s Personnel Rules and Regulations also govern[] Plaintiffs' allegations regarding the promotion process. Accordingly, [the City]'s failure to implement these rules and regulations is a 'grievance' within the meaning of the M[OU] and must be raised through the Grievance Procedure. (Compare *Lloyd*[ *v. County of Los Angeles* (2009)] 172 Cal.App.4th [320,] 326-27 (finding that county employee was not obligated to exhaust internal administrative remedy because his whistleblowing claim was not governed by the internal rules on which the county relied). [¶] In short, Plaintiffs' allegations in the first [(retaliation in

10

violation of the MMBA)] . . . and fifth [(retaliation in violation of Labor Code section 1102.5)] causes of action are 'grievances' as defined in the M[OU]." (Italics added, underscoring omitted.)

Judge Selna's analysis is well founded and we agree that the retaliation in violation of the MMBA and retaliation in violation of Labor Code section 1102.5 claims in the second amended complaint, which were based on virtually identical allegations as those supporting the claims in the federal court complaint before Judge Selna, qualified as grievances within the meaning of the MOU.

As mentioned in Judge Selna's order, plaintiffs did not allege in the federal court complaint that they submitted their claims to the MOU's grievance procedure and thus exhausted their internal administrative remedies. Plaintiffs did not allege in their second amended complaint, nor argue in their appellate briefs, that they have done so. The second amended complaint does not even mention the MOU's grievance procedure. In their opening brief, plaintiffs argue that exhausting their internal administrative remedies would have been futile. We turn to address that issue.

III.

PLAINTIFFS DID NOT ALLEGE FUTILITY IN EXHAUSTING
THEIR INTERNAL ADMINISTRATIVE REMEDIES.

In their opening brief, plaintiffs argue: "Under the facts pled, it is clear that [plaintiff]s complained of the adverse actions to the final decision-maker in the grievance policy—the City Manager—as well as numerous other high-ranking City officials, including the police chief, to resolve this issue prior to seeking relief from this Court." They argue their "complaints fell on deaf ears. [They] also submitted a Government Claim to the City challenging the actions taken against them. . . . The City rejected that claim. . . . The City's demurrer evidenced the fact that the City, to this day, denies that Plaintiffs were subjected to discrimination and retaliation. Requiring [plaintiff]s to file a

11

formal grievance with their immediate supervisors—after the City's top officials have rejected the same claim—would be futile."

The California Supreme Court has explained: "The doctrine requiring exhaustion of administrative remedies is subject to exceptions. [Citation.] Under one of these exceptions, '[f]ailure to exhaust administrative remedies is excused if it is clear that exhaustion would be futile.' [Citations.] 'The futility exception requires that the party invoking the exception "can positively state that the [agency] has declared what its ruling will be on a particular case."' [Citations.]" (*Coachella*, *supra*, 35 Cal.4th at pp. 1080-1081.) "For the futility exception to apply, it is not sufficient that a party can show what the agency's ruling would be on a particular *issue or defense*. Rather, the party must show what the agency's ruling would be '"on a particular *case*." [Citation.] This follows from the exhaustion doctrine itself, which 'precludes review of an intermediate or interlocutory action of an administrative agency.' (*Alta Loma School Dist. v. San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542, 554 . . . ; see also *McHugh v. County of Santa Cruz* (1973) 33 Cal.App.3d 533, 538-539 . . . [exhaustion doctrine 'requires that a party must not only initially raise the issue in the administrative forum, but he must proceed through the entire proceeding to a final decision on the merits of the entire controversy'].)" (*Coachella*, *supra*, 35 Cal.4th at p. 1081.)

As pointed out by Judge Selna, regarding the federal court complaint, plaintiffs "broadly assert that they 'have taken all necessary step[s] to perfect this action, including exhausting any and all appropriate and/or viable administrative remedies'" and "suggest that they perfected their MMBA [claim] by filing a claim for damages pursuant to California Government Code section 910 et seq. and they assert that 'there are no other appropriate and/or viable administrative remedies to exhaust.'. . ." Judge Selna observed such assertions were insufficient to allege that plaintiffs utilized the grievance procedure,

12

or why, if at all, their claims could bypass the grievance procedure. He also noted plaintiffs did not plead any facts showing why the grievance procedure was not viable.

Plaintiffs contend their new allegations in the second amended complaint show that submitting their claims to the City's grievance procedure would have been futile. But, as discussed *ante*, in order to show that exhausting the internal administrative remedies would be futile, plaintiffs must be able to "'"positively state that the [agency] has declared what its ruling will be on a particular case."'" [Citations.]" (*Coachella*, *supra*, 35 Cal.4th at pp. 1080-1081.) While the second amended complaint alleged that plaintiffs directly and through the Association's president "discussed" their complaints with various individuals including Sianez, there is no allegation regarding the timing or substance of those conversations, much less an allegation that anyone with authority under the MOU rejected any grievance by plaintiffs.

Most significantly, the allegations of plaintiffs' communications do not match the required steps clearly set forth in the MOU, especially grievances to the City's manager. The grievance procedure in the MOU states as follows: "Whenever an employee feels that the policy of the City is not being appropriately applied to his circumstances, he/she shall take the following action: [¶] A. The dispute should be discussed fully with the employee's most immediate supervisor, who should make every effort to dispose of said dispute in a fair and equitable manner and in accordance with established policy of the City. After the employee and the supervisor have discussed the incident, the supervisor will give the employee a verbal or written response within two (2) working days. [¶] B. The process enunciated in Number A shall continue through the line of supervision, up to and including the Department Head, if the aggrieved party is not satisfied with the resolution at the initial or preceding step(s). [¶] C. Should the dispute not be resolved by the Department Head to the satisfaction of both parties, the employee will notify the Human Resources Manager of the dispute. The Human Resources Manager may interview both parties in the dispute and others affected and

13

report those findings to the City Manager and recommend steps to be taken to resolve the problem within the Department. Within the (10) working shifts, the parties will be provided with a written response from the City Manager, which is binding and not subject to appeal pursuant to Section 2-86 of the Administrative Section of the City Code."[1]

Had plaintiffs submitted their claims to the grievance procedure, they would have ultimately received a written response from the City's manager regarding the resolution of their complaints. There is no allegation in the second amended complaint that the City's manager, the human resources manager, or any other individual identified in the grievance procedure other than Sianez himself, communicated, directly or indirectly, any kind of decision regarding plaintiffs' claims. Although plaintiffs allege in the second amended complaint that the City's mayor told the Association's president, Martinez, that "there's nothing you can do about this," the mayor does not have a role in the MOU's grievance procedure or in connection with the ultimate resolution of plaintiffs' claims. The mayor's opinion about whatever claims Martinez described to him (the second amended complaint does not allege the substance of Martinez's conversations

---

[1] Citing the California Practice Guide on Employment Litigation, plaintiffs also argue they were not required to exhaust any internal administrative remedies before filing their lawsuit because the MOU's grievance procedure did not contain a "quasi-judicial proceeding." (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2013) ¶ 16:372.7, p. 16-60 (rev. # 1, 2013).) But the California Practice Guide defines "'*quasi-judicial proceeding*'" as involving "i.e., one in which the employees have adequate notice and opportunity to appear and present evidence supporting their claims." (*Ibid.*) The express language of the grievance procedure shows that plaintiffs would have had the opportunity to be heard and present any evidence supporting their claims. There are no allegations in the second amended complaint showing otherwise. Plaintiffs, therefore, have failed to assert allegations or cite legal authority supporting their position that they should be excused from exhausting internal administrative remedies because the MOU's grievance procedure was insufficiently "quasi-judicial."

14

with the mayor) is irrelevant to the issue of whether plaintiffs pleaded facts showing futility. Similarly, allegations regarding plaintiffs' and Martinez's conversations with the City's council members, who also do not have any role in the grievance procedure or ultimate resolution of plaintiffs' claims, are similarly irrelevant to show the futility of plaintiffs submitting their claims to the grievance procedure.

Because plaintiffs failed to allege facts supporting the futility exception to the requirement they exhaust their internal administrative remedies under the MOU, the trial court properly sustained the City's demurrer. The second amended complaint does not mention the MOU, much less address issues concerning its legal import. Apparently, plaintiffs have always based their case on the tactical strategy that their claims were not grievances under the MOU. Accordingly, plaintiffs have consistently ignored the existence of the MOU and its grievance procedure in their many complaints. But the federal district court and the state courts have found that plaintiffs' claims were grievances under the MOU and plaintiffs' position to the contrary is without merit. The law favors enforcement of the MOU and the procedures set forth therein. Plaintiffs have pleaded neither that they complied with the MOU nor any excuse for not doing so. Quite simply, the City is entitled to rely on the procedures set forth in the MOU, and all parties are bound by it.

Plaintiffs have not requested leave to amend either in their appellate briefs or at oral argument, and have not explained how they might amend the second amended complaint to survive demurrer. We therefore do not reach the trial court's other bases for sustaining the demurrer.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.

FYBEL, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

MOORE, J.