

# IN THE SUPREME COURT OF GUAM


**PO II STEVE TOPASNA, Guam Police Department; DOES 1-100,**
Petitioners-Appellants,

**v.**

**GOVERNMENT OF GUAM; LOURDES LEON GUERRERO in her capacity as Governor of Guam; CAPT. STEVEN IGNACIO, in his capacity as Chief of Police, Guam Police Department; MR. EDWARD BIRN, in his capacity as Director, Guam Department of Administration,**
Respondents-Appellees.


Supreme Court Case No.: CVA20-014
Superior Court Case No.: SP0064-20


## OPINION


**Cite as: 2021 Guam 23**


Appeal from the Superior Court of Guam
Argued and submitted on May 21, 2021
Via Zoom video conference

Appearing for Petitioners-Appellants:
Thomas J. Fisher, *Esq.*
Fisher & Associates
167 E. Marine Corps Dr., Ste. 101
Hagåtña, GU 96910

Appearing for Respondents-Appellees:
Jordan Lawrence Pauluhn, *Esq.*
Assistant Attorney General
Office of the Attorney General
Litigation Division
590 S. Marine Corps Dr., Ste. 802
Tamuning, GU 96913


**E-Received**
12/21/2021 4:12:09 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, C.J.:**

[1]      Petitioner-Appellant Police Officer II Steve Topasna appeals from the Superior Court's denial of his Petition for a Writ of Mandamus. Topasna argues the Superior Court misinterpreted Rule 8.406 of the Department of Administration's Personnel Rules and Regulations in holding that he and similarly situated government employees were not entitled to release from their work duties, with pay and without charge to leave, during the State of Emergency declared in response to the novel coronavirus ("COVID-19"). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[2]      In 1996, the then-governor of Guam promulgated the Department of Administration ("DOA") Personnel Rules and Regulations ("Personnel Rules") by executive order. *See* Exec. Order No. 1996-24 at 2. The Personnel Rules "apply to all employees occupying classified positions employed by the departments and agencies under the jurisdiction of the Department of Administration." DOA Pers. R. & Regs. 1.000(A) (1996).

[3]      In March 2020, the Governor of Guam declared a public health State of Emergency in response to COVID-19. *See* Exec. Order No. 2020-03. The Governor later enacted several measures by executive order to reduce public exposure to the virus, including limitations on certain "non-essential" government operations. *See* Exec. Order No. 2020-04 at 1 (closure of non-essential government operations); Exec. Order No. 2020-05 at 2 (clarifying operational status of agencies). Executive Order No. 2020-05 announced that, until further notice, some government agencies would be "completely closed," other agencies would be "operational but closed to public access," and still other agencies would remain "fully operational, including

public access." Exec. Order No. 2020-05 at 2. Many government employees were ordered to report for duty at their work facility only if so requested by their supervisor. *See id.* By contrast, Topasna avers that he was not ordered to refrain from reporting to work.

**[4]** In May 2020, Topasna, a Police Officer II with the Guam Police Department ("GPD"), filed a Petition for a Writ of Mandamus with the Superior Court of Guam. Topasna sought, under Rule 8.406 of the Personnel Rules ("DOA Rule 8.406"), to be released from his work duties with pay and without charge to leave during the State of Emergency, or to be compensated at double his regular rate for the essential work he performed during the State of Emergency.[1] Topasna named the Government of Guam, the Governor, the Director of DOA, and the Chief of GPD (collectively, "the Government") as respondents. The Superior Court denied Topasna's petition, holding that mandamus would not lie because Topasna had failed to prove all predicate conditions for relief under DOA Rule 8.406. The Superior Court entered its judgment, and Topasna timely appealed.

---

[1] Rule 8.406 provides:

**Natural Disasters and Other Emergency Conditions**

A. Excused absence with pay and without charge to leave shall be granted to employees when natural disasters or other emergency conditions create unsafe working conditions.

B. Excused absence, for natural disaster or other emergency conditions, may be granted only when there has been an official proclamation of the hazardous conditions by Executive Order, or an equivalent announcement by the Governor.

C. When the Governor declares a State of Emergency, the appointing authority shall determine whether affected facilities or portions thereof, which are located in the area covered by the Executive Order or proclamation, are to be closed.

   1. Except for those employees determined by the appointing authority to be necessary for providing essential services, employees shall be released from duty with pay, without charge to leave, for the period the facility is closed.

   2. Those employees, required to remain on duty to provide essential services, shall be paid at double the regular rate, or granted compensatory leave credits for the hours worked during the period the facility is closed and the other employees are on excused leave.

D. Employees who are on annual or sick leave status when an emergency condition is declared by Executive Order, or announcement by the Governor and are not required to report to duty, shall be considered as released from duty with pay without charge to leave for the period the work facility is closed.

DOA Pers. R. & Regs. 8.406.

## II. JURISDICTION

**[5]**     This court has jurisdiction over appeals from final judgments rendered by the Superior Court of Guam.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-57 (2021)); 7 GCA §§ 3107(b), 3108(a) (2005).  The appealed decision denying Topasna's petition is a final judgment "because it adjudicates all the claims and all rights and liabilities of all parties, in accordance with 7 GCA § 3108(a) (2005)."  *Agana Beach Condo. Homeowners' Ass'n v. Mafnas*, 2013 Guam 9 ¶ 10.

## III.  STANDARD OF REVIEW

**[6]**     "The Superior Court's decision to deny a writ of mandamus will not be reversed absent a finding of abuse of discretion."  *Dep't of Agric. v. Civil Serv. Comm'n (Rojas)*, 2009 Guam 19 ¶ 8 (citing *Carlson v. Perez*, 2007 Guam 6 ¶ 15).  "A trial court abuses its discretion when its decision is based on clearly erroneous factual findings or an incorrect legal standard."  *Carlson*, 2007 Guam 6 ¶ 15 (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).  However, "[t]he trial court's conclusions of law, such as whether the legal requirements for mandamus are met and issues of statutory interpretation, are reviewed *de novo*."  *Agana Beach*, 2013 Guam 9 ¶ 11 (citing *Rojas*, 2009 Guam 19 ¶ 8).  Further, interpreting an agency rule or regulation is reviewed *de novo*.  *See*, *e.g.*, *Port Transp., Stevedore, & Terminal Emps. v. Guam Civil Serv. Comm'n (Port Auth. of Guam)*, 2018 Guam 18 ¶ 28; *Fleet Servs., Inc. v. Dep't of Admin.*, 2006 Guam 6 ¶ 11; *Doe v. N.H. Dep't of Safety*, 999 A.2d 362, 365 (N.H. 2010).

## IV.  ANALYSIS

### A.  The Superior Court's Analysis of DOA Rule 8.406 Was Not an Abuse of Discretion

**[7]**     Topasna raises only one issue on appeal: whether the trial court abused its discretion "when it ignored and misinterpreted sections of [DOA Rule 8.406]."  Appellant's Br. at 1 (Nov.

24, 2020). In the Superior Court, Topasna argued for one of two outcomes: to be released from his work duties with pay and without charge to leave (hereafter, "paid leave") under DOA Rule 8.406(A), or to receive pay at double his regular rate or compensatory leave credit (hereafter, "double pay") under DOA Rule 8.406(C). The Superior Court's Decision and Order mainly focused on Topasna's double pay claim. The Superior Court held that mandamus would not lie because Topasna did not prove two predicate conditions for double pay under DOA Rule 8.406(C)(2): that Topasna's work facility, GPD, was "closed" and that other GPD personnel were placed on excused leave while Topasna had to report to work. *See* RA, tab 11 at 8-10 (Dec. & Order, June 4, 2020).

[8]     Topasna argues the Superior Court's construction of DOA Rule 8.406 was erroneous because it failed to give proper effect to DOA Rule 8.406(A). In Topasna's view, subsection (A) creates an entitlement to paid leave with only a single predicate condition: a gubernatorial proclamation of a State of Emergency. Appellant's Br. at 11. Thus, Topasna argues the Superior Court erred in denying his paid leave claim for lack of evidence that his work facility was closed. To resolve his claim, we must determine whether work facility closure is a predicate condition for paid leave under DOA Rule 8.406.

### 1.  We apply the same canons of construction for interpreting statutes to interpret administrative rules

[9]     Although this court has often been called to interpret statutes, Topasna's argument requires the interpretation of a DOA agency rule. We have not opined whether the same canons of construction applicable to statutory interpretation also apply to interpreting administrative agency rules. After reviewing case law from other jurisdictions, we conclude the same canons of construction apply in both circumstances. *See, e.g.*, *Black & Decker Corp. v. Comm'r of Internal Revenue*, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to

canons of construction."); *Price v. Starbucks Corp.*, 122 Cal. Rptr. 3d 174, 181 (Ct. App. 2011) ("The rules of statutory construction apply to the interpretation of regulations."); *Tex. Mut. Ins. Co. v. DeJaynes*, 590 S.W.3d 654, 663 (Tex. App. 2019) ("[C]ourts should interpret an administrative rule as it would a statute, applying traditional principles of statutory construction.").

[10]     We therefore interpret DOA Rule 8.406 given our typical canons of statutory construction. The "starting point" of interpretation is the plain language of the rule. *Barrett-Anderson v. Camacho*, 2015 Guam 20 ¶ 23 (quoting *Aguon v. Gutierrez*, 2002 Guam 14 ¶ 6). But we need not adhere to the plain language of the rule where doing so "would lead to absurd or impractical consequences, untenable distinctions, or unreasonable results." *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 17 (quoting *Bowlby v. Nelson*, DCA No. 83-0096A, S.C. No. 69-83, 1985 WL 56583, at *2 (D. Guam App. Div. Sept. 5, 1985)). We review DOA Rule 8.406 as a whole, *see, e.g.*, *Macris v. Guam Mem'l Hosp. Auth.*, 2008 Guam 6 ¶ 19, and construe those provisions "deal[ing] with the same subject matter" *in pari materia* with one another, *Aguon*, 2002 Guam 14 ¶ 13; *see also Lexin v. Superior Court*, 222 P.3d 214, 241 (Cal. 2010). Finally, we interpret DOA Rule 8.406 with the intention "to give effect to all of its provisions so that no part would be superfluous or insignificant." *Macris v. Richardson*, 2010 Guam 6 ¶ 15 (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

### 2.  Facility closure is a predicate condition for paid leave under DOA Rule 8.406

[11]     We consider *de novo* whether Topasna's reading of DOA Rule 8.406 reflects the relevant canons of construction. *See, e.g.*, *Doe*, 999 A.2d at 365. We begin with the plain meaning of subsection (A): "Excused absence with pay and without charge to leave shall be granted to employees when natural disasters or other emergency conditions create unsafe working

conditions." DOA Pers. R. & Regs. 8.406(A). Topasna argues this subsection's use of the word "shall" proves that an employee's entitlement to paid leave is mandatory. Appellant's Br. at 8-9. We agree the word "shall" means the entitlement, when properly triggered, is mandatory rather than discretionary. *Cf. Enriquez v. Smith*, 2015 Guam 29 ¶ 26. However, the Superior Court held that Topasna failed to establish the predicate conditions necessary to trigger the rule, not that the Government may exercise discretion to ignore the rule if properly triggered. *See* RA, tab 11 at 8-10 (Dec. & Order). The salient question is not what "shall" means, but what predicate conditions are necessary to trigger the entitlement.

[12]    In Topasna's view, the only predicate condition for paid leave under subsection (A) is a gubernatorial declaration of a State of Emergency. Appellant's Br. at 11. The State of Emergency requirement is not found in the text of subsection (A); subsection (A) instead contemplates "natural disasters or other emergency conditions creat[ing] unsafe working conditions." DOA Pers. R. & Regs. 8.406(A). Yet DOA Rule 8.406(A) neither defines nor explains the terms "natural disasters," "other emergency conditions," or "unsafe working conditions," nor does the rule explain who has the authority to determine whether such conditions exist. Read in isolation, DOA Rule 8.406(A) would be too ambiguous to create an enforceable entitlement.

[13]    But subsections of a rule should not be read in isolation; all language of a rule "must be examined within its *context*," which includes looking at its related provisions. *Macris v. Guam Mem'l Hosp. Auth.*, 2008 Guam 6 ¶ 19 (quoting *Aguon*, 2002 Guam 14 ¶ 9). DOA Rule 8.406(B) clarifies subsection (A). Subsection (B) provides that "[e]xcused absence, for natural disaster or other emergency conditions, may be granted only when there has been an official proclamation of the hazardous conditions by Executive Order, or an equivalent announcement by

the Governor." DOA Pers. R. & Regs. 8.406(B). Reading subsections (A) and (B) together, this predicate condition is clear: a gubernatorial declaration is necessary to satisfy the "natural disasters or other emergency conditions" language of subsection (A). We therefore agree with Topasna that the declaration of a State of Emergency, or an equivalent announcement by the Governor, is a predicate condition for paid leave under DOA Rule 8.406.

[14]    Still, ambiguity remains as to the meaning of "unsafe working conditions." To understand this phrase, we look to subsection (C), which provides: "When the Governor declares a State of Emergency, the appointing authority shall determine whether affected facilities or portions thereof, which are located in the area covered by the Executive Order or proclamation, are to be closed." DOA Pers. R. & Regs. 8.406(C). We find the plain meaning of subsection (C) clear: the appointing authority has the power to determine whether certain work facilities are affected by the conditions creating the State of Emergency and, if so, to close the work facility. Therefore, subsection (C) provides that the appointing authority has the power to determine whether "unsafe working conditions," as contemplated by subsection (A), are present. Subsection (C)(1) adds that except for certain employees who provide "essential services," employees "shall be released from duty with pay, without charge to leave, for the period the facility is closed." DOA Pers. R. & Regs. 8.406(C)(1). We find the meaning of this subsection plain as well: when the appointing authority closes the work facility, the facility's non-essential employees must be placed on paid leave while their work facility is closed. As with subsections (A) and (B), subsections (C) and (C)(1) complement one another.

[15]    There is a conflict, however, between the plain language of subsection (C)(1) and Topasna's expansive reading of subsection (A). In Topasna's view, an employee is entitled to paid leave under subsection (A) solely upon the declaration of a State of Emergency. Subsection

(C)(1), however, contemplates paid leave only if—and only while—the employee's work facility is closed because of the State of Emergency. Therefore, the grant of paid leave under subsection (C)(1) is much narrower than the grant of paid leave under Topasna's reading of subsection (A). Topasna glosses over this distinction, suggesting subsection (C)(1) merely "reiterates the requirements of [subsection] (A) and acknowledges the existence of certain essential services that must be met." Appellant's Br. at 12. We disagree with Topasna's assessment. If Topasna's reading were correct, then an employee would be entitled to paid leave under subsection (A) even if the facility is not closed under subsection (C). The language "for the period the facility is closed" in subsection (C)(1) would be swallowed by the broader rule of subsection (A) and would therefore be superfluous. We are disinclined to read legal texts in this way. *See, e.g.*, *Bank of Guam v. Del Priore*, 2007 Guam 7 ¶ 27 (disapproving a statutory construction that would render statute's express language superfluous).

[16]     There is a similar conflict between Topasna's reading of subsection (A) and the plain language of subsection (D). Subsection (D) provides that employees already on annual or sick leave at the time of the State of Emergency declaration "shall be considered as released from duty with pay without charge to leave," but only "for the period the work facility is closed." DOA Pers. R. & Regs. 8.406(D). As above, if Topasna's reading of subsection (A) were correct, then such an employee would be entitled to paid leave under the broad rule of subsection (A) despite the narrower and more specific grant of paid leave under subsection (D). The "for the period the work facility is closed" language in subsection (D) would likewise be superfluous.

[17]     Topasna proposes no interpretive method to reconcile this conflict; his briefing discusses subsection (C)(1) only briefly and does not discuss subsection (D). However, as a general rule of

statutory interpretation, when two *in pari materia* provisions conflict with each other, the more specific provision trumps the general:

> It is an old and familiar rule that, where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012) (quoting *United States v. Chase*, 135 U.S. 255, 260 (1890)). This "general-specific" canon ensures that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974). Instead, the more specific statute will operate as an "exception to, or qualification of, the general statute." *Wark v. Wash. Nat'l Guard*, 557 P.2d 844, 845 (Wash. 1976) (en banc).

[18] Here, we perceive no clear intention in DOA Rule 8.406 that subsections (C)(1) and (D) be controlled or nullified by the more general subsection (A). We therefore interpret these more specific subsections as qualifications to the general policy of paid leave announced by subsection (A). We conclude subsections (C)(1) and (D) limit an employee's entitlement to paid leave to periods in which the employee's work facility is closed. And because the facility-closure requirement necessary to subsections (C) and (D) qualify the general rule established by subsection (A), we conclude that facility closure, like a State of Emergency declaration, is therefore a predicate condition for paid leave under DOA Rule 8.406. Thus, the Superior Court's analytical approach relying on facility closure was not an error of law, and thus not an abuse of discretion.

[19] Topasna also cites *Koji v. Neves*, 2016 Guam 36, for the proposition that a trial court's failure to perform a required analysis requested by one party is an abuse of discretion. Topasna

appears to argue the Superior Court abused its discretion by failing to analyze his paid leave claim separately from his double pay claim. *See* Appellant's Br. at 5, 9. However, *Koji* does not apply to the facts here. In *Koji*, the trial court ignored a party's motion for an inconvenient forum analysis despite Guam's inconvenient forum statute explicitly providing that a party may raise the issue by motion. *See* 2016 Guam 36 ¶ 40. Here, the Superior Court did not ignore Topasna's request to be placed on paid leave, but properly considered and resolved the issue. The Superior Court ruled that Topasna was ineligible for paid leave under subsection (C)(1) because he had been designated as "essential" by the Chief of Police and because he failed to prove that his work facility was closed. *See* RA, tab 11 at 7-9 (Dec. & Order). Because subsection (C)(1) qualifies the rule of subsection (A), the Superior Court did not have to perform a separate analysis under subsection (A); an analysis under subsection (C)(1) was sufficient to resolve the issue. In contrast to *Koji*, the Superior Court did not abuse its discretion by not performing an unnecessary analysis.

## B. We Need Not Reach the Government's Alternative Grounds for Defending the Judgment

[20]　　The Government proposes several alternative grounds on which to resolve this case. *See generally* Appellee's Br. (Jan. 14, 2021). Although the Government did not cross-appeal the Superior Court's judgment, an appellee "may, despite a failure to file a cross-appeal, *defend* a judgment on any ground consistent with the record, even if rejected or ignored by the lower court." *Rahmani v. Park*, 2011 Guam 7 ¶ 68. Thus, the Government's alternative theories defending the judgment are proper for our consideration. But because we have resolved the case based on textual interpretation, it is unnecessary to reach the merits of these alternative theories. *Cf. Unpingco v. Derry*, 2021 Guam 1 ¶ 21.

## V.  CONCLUSION

**[21]**  Because the Superior Court did not abuse its discretion in its analysis of Topasna's claim for paid leave under DOA Rule 8.406, we **AFFIRM** its Decision and Order denying Topasna's petition and the resulting judgment.

|  |  |
|---|---|
| /s/ | /s/ |
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
F. PHILIP CARBULLIDO
Chief Justice