

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## LAYLA STORY-BERNARDO, DANIEL BERNARDO, TOMMY ARCEO, BETTY DIAZ, FAYE DORA CRUZ SANCHEZ, NONITO SANTOS, JOHN PINAULA, DANIEL ANCIANO, RAYCIA MARIE SAN NICOLAS CHARFAUROS, and ROEL RAMA,
Plaintiffs-Appellants,

**v.**

## GOVERNMENT OF GUAM, LOURDES A. LEON GUERRERO,
in her official capacity as the Governor of Guam,
Defendants-Appellees.

Supreme Court Case No. CVA23-002
Superior Court Case No. CV0733-20

## OPINION

## Cite as: 2023 Guam 27

Appeal from the Superior Court of Guam
Argued and submitted on August 16, 2023
Hagåtña, Guam

Appearing for Plaintiffs-Appellants:
Joshua D. Walsh, *Esq*.
Razzano Walsh & Torres, P.C.
139 Murray Blvd., Ste. 100
Hagåtña, GU 96910

Appearing for Defendants-Appellees:
Joseph B. McDonald, *Esq*.
McDonald Law Office, LLC
173 Aspinall Ave., Ste. 207A
Hagåtña, GU 96910



**E-Received**
12/29/2023 3:17:44 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**PER CURIAM:**

[1]      Plaintiffs-Appellants Layla Story-Bernardo, Daniel Bernardo, Tommy Arceo, Betty Diaz, Faye Dora Cruz Sanchez, Nonito Santos, John Pinaula, Daniel Anciano, Raycia Marie San Nicolas Charfauros, and Roel Rama (collectively, "Plaintiff Class" or "Appellants"), employees of various Government of Guam agencies, appeal the Superior Court's dismissal of a proposed class action seeking payment for denied "double pay and/or overtime" earned during the COVID-19 public health emergency. Appellants failed to exhaust their administrative remedies, and the facts alleged in their complaint are insufficient to establish exhaustion was futile. Therefore, their claims for pay and declaratory relief are barred. Further, estoppel is not a claim upon which relief may be granted. Finally, the Superior Court correctly found the Plaintiff Class could not pursue claims under Guam's Proper Government Spending Act because the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal appropriation, over which the Guam Legislature had no authority. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[2]      In March 2020, the Governor of Guam, Lourdes A. Leon Guerrero, declared a state of emergency in Guam in response to the growing threat of COVID-19. Exec. Order No. 2020-03 at 1.[1] Two days later, the Governor issued Executive Order No. 2020-04, ordering the immediate closure of all non-essential Government of Guam offices.

[3]      Around this time, the United States Congress passed the CARES Act to combat the economic impact of COVID-19. The CARES Act established the Coronavirus Relief Fund, which

---

[1] Executive Order No. 2020-03 also authorized overtime for Government of Guam employees working more than 40 hours a week to mitigate and respond to the effects of COVID-19. Exec. Order No. 2020-03 at 2.

appropriated funds from the United States Treasury directly to state, territorial, tribal, and local governments. *See* 42 U.S.C.A. § 801(a) (Westlaw current through Pub. L. 118-23 (2023)). The Governor accepted CARES Act funds, distributing aid to frontline workers and funding medical necessities.

[4]     In October 2020, Government of Guam employees from the Guam Memorial Hospital Authority, the Department of Public Works, the Department of Education, the Department of Corrections, the Guam Solid Waste Authority, the Guam Fire Department, the Judiciary of Guam, the Guam Police Department, the Guam Behavioral Health and Wellness Center, and the Guam Customs and Quarantine Agency filed a class action complaint in the Superior Court (the "Original Complaint"). The Original Complaint named the Government of Guam, the Governor, the Director of the Department of Administration ("DOA"), the Judiciary of Guam, and the administrative heads of the named agencies and branches as defendants. The Plaintiff Class contended the Government of Guam had not followed Rule 8.406 of DOA's Personnel Rules and Regulations and "den[ied] double pay and overtime to employees [working] during the public health emergency related to COVID-19." Record on Appeal ("RA"), tab 1 at 6, 11-12 (Class Action Compl., Oct. 6, 2020).

[5]     The Original Complaint also advanced several other arguments and requests, including a claim against the Governor and DOA Director for violation of the Proper Government Spending Act.[2] In response, the defendants moved to dismiss. All Superior Court judges recused themselves, and the case was assigned to Judge *Pro Tempore* Teresa Kim-Tenorio, who decided

---

[2] These included: (1) preliminary injunction against the Governor and DOA Director, (2) violation of the Due Process Clause and the Guam Organic Act by all defendants, (3) violation of the Minimum Wage and Hour Act of Guam by all defendants, (4) violation of the DOA's Personnel Rules and Regulations regarding overtime against all defendants, (5) declaratory judgment against all defendants, (6) estoppel against all defendants, and (7) imposition of constructive trust against the Government of Guam, the Governor, and DOA Director.

the Plaintiff Class lacked standing under the Proper Government Spending Act to raise claims related to the expenditure of CARES Act funds. As for the other claims, Judge Kim-Tenorio found the Plaintiff Class had constitutional standing, and that sovereign immunity was waived because administrative exhaustion was futile. However, Judge Kim-Tenorio dismissed the remaining counts for failure to state a claim upon which relief could be granted, with leave to amend.[3]

[6]     In its First Amended Complaint, the Plaintiff Class re-pleaded only three counts against the Government of Guam and the Governor, namely: (1) violating double pay for emergency conditions, (2) declaratory judgement, and (3) estoppel. The Governor and Government of Guam again moved to dismiss the First Amended Complaint. As all claims against the Judiciary had been dismissed, the case was eventually transferred from Judge *Pro Tempore* Kim-Tenorio to Superior Court Judge Elyze Iriarte.

[7]     Judge Iriarte revisited the sovereign immunity issue previously decided by Judge Kim-Tenorio and reversed course, dismissing the First Amended Complaint because the Plaintiff Class did not allege that either administrative review through Guam's Government Claims Act or the grievance process of the Civil Service Commission ("CSC") had been exhausted. Judge Iriarte also concluded sovereign immunity barred the claims for declaratory relief and estoppel. The Plaintiff Class was again offered leave to amend to "includ[e] any necessary jurisdictional allegations." RA, tab 110 at 10 (Dec. & Order, May 2, 2022).

[8]     A Second Amended Complaint was filed, and the same three counts were pleaded. The Second Amended Complaint also included further allegations about the futility of the administrative grievance process. Despite these other allegations, the Superior Court again found

---

[3] Judge Kim-Tenorio also dismissed all claims against the Judiciary.

sovereign immunity had not been waived and dismissed the action. The Plaintiff Class timely appealed.

## II. JURISDICTION

[9] This court has jurisdiction over appeals from a final judgment. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-23 (2023)); 7 GCA §§ 3107, 3108(a) (2005).

## III. STANDARD OF REVIEW

[10] This appeal raises questions of law, which we review *de novo*. *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2020 Guam 20 ¶ 37; *see also Town House Dep't Stores, Inc. v. Dep't of Educ.*, 2012 Guam 25 ¶ 11 (sovereign immunity); *Guam Fed'n of Tchrs. v. Gov't of Guam*, 2013 Guam 14 ¶ 26 (exhaustion of administrative remedies); *San Agustin v. Mansapit-Shimizu*, 2020 Guam 25 ¶ 9 (failure to state claim); *Linsangan v. Gov't of Guam*, 2020 Guam 27 ¶ 11 (per curiam) (subject matter jurisdiction); *People v. Robert*, 2019 Guam 2 ¶ 5 (statutory interpretation).

[11] When reviewing a trial court's dismissal of a complaint, we "must accept all the well-pleaded facts as true, 'construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor.'" *Guam Police Dep't v. Guam Civ. Serv. Comm'n (Charfauros)*, 2020 Guam 12 ¶ 8 (quoting *First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9).

## IV. ANALYSIS

### A. The Plaintiff Class's Claims Are Barred by Sovereign Immunity

[12] Sovereign immunity means that a sovereign cannot be sued in its own courts without its consent. *Alden v. Maine*, 527 U.S. 706, 745 (1999); *Limtiaco v. Guam Fire Dep't*, 2007 Guam 10 ¶ 39 ("There is no question that Guam possesses inherent sovereign immunity from suit without its consent pursuant to the Organic Act."). "The Government of Guam enjoys broad sovereign

immunity." *Bautista v. San Agustin*, 2015 Guam 23 ¶ 18 (quoting *Guam Fed'n of Tchrs. ex rel. Rector v. Perez*, 2005 Guam 25 ¶ 18). For a suit to be maintained against the Government of Guam, sovereign immunity must be expressly waived; without this express waiver, the Government of Guam and any of its instrumentalities or agencies cannot be sued. *Id.* ¶¶ 18, 22.

[13] Sovereign immunity is a component of subject matter jurisdiction. *Ehlert v. Univ. of Guam*, 2019 Guam 27 ¶ 11. Because sovereign immunity implicates a court's subject matter jurisdiction, it "can be raised at any time, either by a party or by the court." *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 22.

### 1. The law of the case doctrine did not prevent Judge Iriarte from revisiting sovereign immunity

[14] Appellants argue Judge Iriarte "improperly disturbed" the finding of Judge Kim-Tenorio that sovereign immunity had been waived. Appellants' Br. at 16 (Apr. 26, 2023). They allege "revers[ing] course" was improper, as the issue was concluded after Judge Kim-Tenorio found sovereign immunity waived based on futility. *Id.* at 17. Judge Iriarte declined to consider the Plaintiff Class's "law of the case" argument, noting jurisdiction can be raised at any time.

[15] "Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court . . . ." *People v. Hualde*, 1999 Guam 3 ¶ 13. However, we have observed that "[t]he law of the case doctrine generally acts as a channel of a trial court's discretion rather than as a limit on a trial court's power." *People v. Rios*, 2011 Guam 6 ¶ 22. As such, a trial court has discretion to depart from the law of the case in certain circumstances. *Hualde*, 1999 Guam 3 ¶ 13. Additionally, the law of the case doctrine does not apply to the "fundamental question of subject matter jurisdiction." *Accord Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 805 n.10 (9th Cir. 2020).

[16]     The Government and the Governor raised sovereign immunity in response to the First Amended Complaint.  As sovereign immunity implicates a court's subject matter jurisdiction, Judge Iriarte was required to address the jurisdictional effect of sovereign immunity as a threshold issue.  *See Perez*, 2005 Guam 25 ¶ 16 n.1.  The law of the case doctrine did not apply.

### 2.  The Plaintiff Class failed to exhaust administrative remedies

[17]     Appellants additionally argue the Superior Court erred in dismissing their complaint because they "sufficiently averred generally the conclusion of a condition precedent that would lead to a waiver of sovereign immunity."  Appellants' Br. at 12.  They contend that this court has "made it clear that government employees seeking the pay due to them need not run through unnecessary sovereign immunity hoops."  *Id.* (citing *Limtiaco*, 2007 Guam 10).  Appellants are correct that sovereign immunity does not apply to awards given by the CSC in grievance proceedings, but they do not allege that any member of the class brought a claim to the CSC.

[18]     "For employees of the government of Guam . . . [the] law provides two different methods for overcoming sovereign immunity.  First, employees protected under the merit system can seek judicial review [under 4 GCA § 4403].  Second, employees under a contract may pursue potential remedies through the Government Claims Act."  *Ehlert*, 2019 Guam 27 ¶ 11 (internal citations omitted).  Appellants make no arguments under the Government Claims Act.

[19]     We have previously held "that sovereign immunity does not apply to an award given by the CSC in a grievance proceeding," *Limtiaco*, 2007 Guam 10 ¶ 34, and "[d]ecisions of the Civil Service Commission are subject to judicial review," *Charfauros v. Civ. Serv. Comm'n (Guam Police Dep't)*, 2022 Guam 19 ¶ 15.  But we have also noted that "[g]enerally, even if . . . some other statutory remedy[] were to apply, there is a universal principle that one must exhaust one's administrative remedies before pursuing it."  *Limtiaco*, 2007 Guam 10 ¶ 27.  The Plaintiff Class

alleges that the DOA Rules apply to them. As we explained in *Limtiaco v. Guam Fire Department*,

Chapter 12 of the DOA Rules govern grievance procedures:

> Rule 12.500, entitled "Informal Grievance Procedures," is the first step of the grievance procedure. Rule 12.505B(1) provides that "an employee may present a grievance to his supervisor concerning a continuing practice or condition at any time. . . .
>
> Rule 12.600, entitled "Formal Grievance Procedures," is the next step. A prerequisite for pursuing a formal grievance procedure is that the employee must have pursued an informal grievance under section 12.500. . . .
>
> Rule 12.800, entitled "Grievance Review Board," is the next step. It requires the aggrieved employee to have gone through informal grievance procedures and formal grievance procedures. . . . Finally, Rule 12.900, entitled "Appeal to the Civil Service Commission," is the last administrative step.

*Limtiaco*, 2007 Guam 10 ¶¶ 48-51.

[20]    In its Second Amended Complaint, the Plaintiff Class alleges that one member made an

informal grievance that went unresolved. That member then initiated a step-four grievance with

DOA's Grievance Review Board, which was denied as "moot" because of this litigation. The

Plaintiff Class further alleges that "[t]he decision of the Grievance Review Board constitutes an

exhaustion of administrative remedies that other similarly situated plaintiffs can rely upon."[4] RA,

tab 122 at 8 (Second Am. Class Action Compl., July 29, 2022). Although under our notice-

pleading standard, we must take all factual allegations in the complaint as true, *see Taitano v.*

*Calvo Fin. Corp.*, 2008 Guam 12 ¶ 2, "we are not bound to accept as true a legal conclusion

couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986). It is simply

incorrect as a matter of law that an employee has exhausted her administrative remedies when she

fails to appeal an adverse decision of the Grievance Review Board to the Civil Service

---

[4] Although we have yet to pass on the question, under federal law, the doctrine of "vicarious exhaustion" may permit a named plaintiff who did not exhaust his administrative remedies to "piggyback on the administrative complaints of [those] who properly exhausted individual remedies." *See Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 34 (D.C. Cir. 2014).

Commission. *Cf. Limtiaco*, 2007 Guam 10 ¶¶ 21, 53 (finding employee had exhausted his remedies because "[t]here [was] no reason for [him] to pursue formal (written) grievance procedures if informal grievance procedures were effective"). Taking the factual allegations in the Second Amended Complaint as true, no member of the Plaintiff Class exhausted administrative remedies because no one appealed to the CSC.

### 3. Appeal to the Civil Service Commission was not futile

[21]    We have acknowledged, however, that under certain circumstances, a plaintiff need not exhaust administrative remedies to sue. In its Second Amended Complaint, the Plaintiff Class sought to invoke the futility exception to the requirement that administrative remedies be exhausted. RA, tab 122 at 3, 16-17 (Second Am. Class Action Compl.). And on appeal, Appellants argue that "seeking further administrative review of the pay grievance was futile as a factual matter, and [they] have alleged as such in their Second Amended Complaint." Appellants' Br. at 14. Although they are correct that the futility exception to exhaustion of administrative remedies applies in this jurisdiction, they failed to adequately plead it. We find that exhaustion of the Plaintiff Class's remedies was not futile as a matter of law.

[22]    In *Barrett-Anderson v. Camacho*, we adopted the futility exception, stating it may excuse a party from exhausting its administrative remedies:

> Generally, when a statute requires exhaustion of administrative remedies, a party's failure to exhaust deprives the court of subject matter jurisdiction. Certain judicially recognized exceptions, however, apply to the doctrine of administrative exhaustion that can confer jurisdiction on a court despite a party's failure to exhaust. One such exception is the futility exception. Under the futility exception, a party need not exhaust administrative remedies if the record reflects that it would be futile to do so.

2015 Guam 20 ¶ 32 (first citing *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12 ¶ 23; and then citing *Blaz v. Cruz*, Civ. Appeal No. 84-0014A, 1985 WL 56592, at *4 (D. Guam

App. Div. Apr. 29, 1985)). In shaping the contours of this exception, we have observed that "[i]t is axiomatic that a party need not exhaust claims over which the relevant administrative agencies would not have jurisdiction," because in such cases it would be "impossible to exhaust." *DFS Guam*, 2020 Guam 20 ¶ 72 n.16 (quoting *Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004)). We have also cited with approval California case law that the "exception exists where the administrative agency has made it clear it would be futile to pursue the administrative process to conclusion." *Dep't of Agric. v. Civ. Serv. Comm'n (Rojas)*, 2009 Guam 19 ¶ 19 (citing *Alta Loma Sch. Dist. v. San Bernardino Cnty. Comm. on Sch. Dist. Reorganization*, 177 Cal. Rptr. 506, 513 (Ct. App. 1981)). "Where . . . the CSC has stated a definite opinion or policy contrary to [a party's] position," failure to exhaust administrative remedies is excusable because requiring a party to exhaust their remedies at "the CSC would require them to 'pump oil from a dry hole.'" *Id.* (quoting *Ogo Assocs. v. City of Torrance*, 112 Cal. Rptr. 761, 763 (Ct. App. 1974)).

[23]     An employee's "preconception of the futility of administrative action [does] not permit [her] to bypass the administrative remedy." *Bockover v. Perko*, 34 Cal. Rptr. 2d 423, 429 (Ct. App. 1994) (alterations in original) (citation omitted). "[F]utility is a narrow exception . . . . [that] applies only if the party invoking it can positively state that the administrative agency has declared what its ruling will be in a particular case." *Steinhart v. County of Los Angeles*, 223 P.3d 57, 68 (Cal. 2010) (citations omitted). Whether exhaustion of administrative remedies would be futile is a question of law we review *de novo*. *Barrett-Anderson*, 2015 Guam 20 ¶ 32; *accord Buechler v. Wenatchee Valley Coll.*, 298 P.3d 110, 117 (Wash. Ct. App. 2013); *Stephens v. Bd. of Regents of Univ. of Minn.*, 614 N.W.2d 764, 775 (Minn. Ct. App. 2000).

[24]     The Plaintiff Class's Second Amended Complaint included the following allegations, which they argue establish futility:

94.     In an effort to give cover to Guam's agencies refusing to follow the Regulations, Governor Leon Guerrero and Director Edward Birn of the Department of Administration have declared, without reason, that double pay is not applicable to the Emergency; any attempt to exhaust any applicable administrative remedies would be futile.

95.     Further attempts to exhaust any applicable administrative remedies was also made futile by the determination on September 28, 2021, by the DOA Grievance Review Board that the grievance of double pay issues was "moot" because of action before the Superior Court of Guam in CV733-20. An Amended Complaint had been filed in CV733-20 on September 16, 2021.

96.     The Superior Court of Guam has already concluded in a prior Decision and Order in this civil action issued on May 27, 2021—nearly four months before the DOA determined that further administrative procedures were moot—that the government had waived sovereign immunity in this case as it was futile for the Plaintiffs to exhaust any administrative remedies available to them.

97.     The Attorney General of Guam has also declared that double pay is not applicable to Plaintiffs, making administrative review futile.

98.     Grievance procedures are futile, as the various Government Agencies that would hear such grievances have been closed, and grievances that have been filed have been stalled.

99.     Upon information and belief, all agencies would follow Director Birn's interpretation and the interpretation of the Attorney General when dealing with the issues presented in this Complaint.

100.     The Pandemic had also closed the Guam Civil Service Commission for extended periods, making review of a grievance related to the emergency pandemic impracticable.

RA, tab 122 at 15-17 (Second Am. Class Action Compl.).

[25]     In reviewing the factual allegations, which we must take as true (to the extent they are not legal conclusions couched as facts), we find the Plaintiff Class failed to establish futility. Significantly, although they alleged the Governor, DOA Director, and Attorney General all declared that Rule 8.406(C) did not apply during the pandemic, nowhere do they claim the CSC stated a definite opinion or policy on the rule or declared what its ruling would be in such a case. *See Rojas*, 2009 Guam 19 ¶ 19; *Steinhart*, 223 P.3d at 68. The Plaintiff Class's preconceptions

about the futility of appeal to the CSC did not permit them to bypass the administrative remedy. *See Bockover*, 34 Cal. Rptr. 2d at 429. The claim that appeal to the CSC was "impracticable" because the pandemic had caused closures of the CSC for "extended periods" simply does not rise to the level of "futile." *See DFS Guam*, 2020 Guam 20 ¶ 72 n.16; *see, e.g.*, *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 99 P.3d 553, 560 (Alaska 2004) ("[T]his requirement may be excused where the attempt to exhaust administrative remedies is futile or *severely impractical*." (emphasis added)); *BP Commc'ns Alaska, Inc. v. Cent. Collection Agency*, 737 N.E.2d 1050, 1055 (Ohio Ct. App. 2000) ("[E]xception to exhaustion of administrative remedies applies when it would be impracticable to pursue the administrative remedy . . . because the administrative entity lacks the authority to render relief . . . ."). We cannot say that in this case requiring the Plaintiff Class to exhaust its remedies at "the CSC would [have] require[d] them to 'pump oil from a dry hole.'" *See Rojas*, 2009 Guam 19 ¶ 19 (citation omitted).

[26] Because exhaustion of administrative remedies was not futile as a matter of law, sovereign immunity bars judicial review of the Plaintiff Class's merit system disputes regarding pay under 4 GCA § 4403.

### 4. The Plaintiff Class cannot pursue other statutory remedies because they failed to exhaust administrative remedies

[27] In addition to 4 GCA § 4403, Appellants point to three additional statutes they claim allowed them to pursue other remedies in the Superior Court.[5] It is true that "[t]he Legislature may waive sovereign immunity where it would otherwise apply." *Gange v. Gov't of Guam*, 2017

---

[5] We can quickly dispense with the claim that 5 GCA § 9240—which allows judicial review by a party adversely affected by an agency decision by filing a petition for a writ of mandate—provided the government's consent to be sued in this case. As we have stated before, "where the agency's statutes require appeal to the CSC . . . . reliance on the procedures of the writ of mandate is inappropriate . . . ." *Carlson v. Perez*, 2007 Guam 6 ¶ 66. Furthermore, in *Topasna v. Government of Guam*, we affirmed the Superior Court's decision that mandamus would not lie on a claim almost identical to this one. *See* 2021 Guam 23 ¶ 4. In any event, a class action lawsuit is simply not the same as a petition for a writ of mandate.

Guam 2 ¶ 34. However, we find our statement in *Limtiaco* to be controlling in this case: "[E]ven if . . . some other statutory remedy[] were to apply, there is a universal principle that one must exhaust one's administrative remedies before pursuing it." 2007 Guam 10 ¶ 27.

[28]     Appellants cite 22 GCA § 3117 and Guam's Fair Labor Standards Act as a "collection scheme that also operates as a waiver." Appellants' Reply Br. at 4 (July 26, 2023). This reference in their reply brief is the first time Appellants argue this provision provides a statutory remedy that would enable their suit. It was not referenced in the opening brief or in any filings in the Superior Court.[6] We have discretion to reject issues raised for the first time in a reply brief. *See People v. Quinata*, 2023 Guam 25 ¶ 32 n.4; *Guam Greyhound, Inc. v. Brizill*, 2008 Guam 13 ¶ 7 n.3; *People v. Borja*, 2017 Guam 20 ¶ 28. Because this argument was not raised below or in the opening brief, it would be "manifestly unfair" to allow it to be presented for the first time in the reply brief. *See In re Estate of Concepcion*, 2003 Guam 12 ¶ 11. We find it has been forfeited. *See Quinata*, 2023 Guam 25 ¶ 32 n.4; *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) ("Although sovereign immunity and hence subject matter jurisdiction are at issue in this case, our responsibility to ensure even sua sponte that we have subject matter jurisdiction before considering a case differs from our discretion to eschew untimely raised legal theories which may support that jurisdiction. We have no duty under the general [forfeiture] rule to consider the latter."). As we find this issue forfeited, we need not determine whether this "collection scheme" requires exhaustion of administrative remedies.

[29]     Appellants finally cite 4 GCA § 6221.1 in their reply brief, arguing this statute—which creates a cause of action against the Government of Guam for unpaid overtime—acts as an "explicit waiver," adequate to maintain their suit. Reply Br. at 4; 4 GCA § 6221.1 (2005).

---

[6] During oral argument, Appellants admitted this argument was raised for the first time in their reply brief. *See* Digital Recording at 10:21:10–10:22:44 (Oral Arg., Aug. 16, 2023).

Although this statute was not mentioned in the opening brief, it was pleaded in the Second Amended Complaint, so we will reach this issue. We hold that even where the statute applies, administrative remedies must first be exhausted before such a claim can be brought in the Superior Court.

[30]     Assuming, without deciding, that 4 GCA § 6221.1 operates as a waiver of sovereign immunity for double pay claims under DOA Rule 8.406,[7] we must still determine whether it is exempt from the "[g]enerally . . . universal principle that one must exhaust one's administrative remedies before pursuing [other statutory remedies]." *See Limtiaco*, 2007 Guam 10 ¶ 27. We conclude that it is not.

[31]     We find the reasoning of the California Supreme Court to be persuasive on this issue:

> In appropriate circumstances, we also have inferred an exhaustion requirement in statutory and regulatory schemes that do not contain any express command that available administrative procedures be engaged before relief may be sought in court. In deciding whether to draw such an inference, we give due consideration to the extrajudicial procedures involved and to whether recognition of an exhaustion requirement "would comport with the statutory scheme and advance the general purposes served by the exhaustion rule." This analysis also must recognize that when the Legislature has provided for an adequate remedy, "absent a clear indication of legislative intent, we should refrain from inferring a statutory exemption from our settled rule requiring exhaustion of administrative remedies."

---

[7] Title 4 GCA § 6221.1 provides that "any employee who is entitled to overtime may bring action in the Superior Court against the government of Guam for payment of all back pay due as a result of overtime, in addition to all other remedies allowed at law or equity." The statutory scheme does not define "overtime." Looking to the DOA Personnel Rules and Regulations for guidance, Rule 7.402(E)(1) defines overtime work as occurring when "[t]he employee renders service in excess of 40 straight time hours per workweek." This definition follows the Federal Fair Labor Standards Act and Guam's Minimum Wage and Hour Act, which state that overtime, "at a rate not less than one and one-half times the regular rate," must be paid when an employee works more than forty hours in a workweek. *See* 29 U.S.C.A. § 207(a)(1); 22 GCA § 3107(a) (as amended by Guam Pub. L. 30-215:2 (Dec. 13, 2010)). Rule 8.406(C)(2) states that "employees, required to remain on duty to provide essential services, shall be paid at double the regular rate, or granted compensatory leave credits for the hours worked during the period the facility is closed and the other employees are on excused leave." A separate provision of the Pay Plan, which governs compensation during typhoons, seems to indicate this type of pay may be considered "overtime." *See* 4 GCA § 6226 (2005). But we need not decide whether "double pay" under the rule is "overtime" that can be pursued under the statute, because this issue is not necessary to resolution of this appeal. *See Gov't of Guam v. Gutierrez*, 2015 Guam 8 ¶ 34 ("This Court may decline to address issues not necessary to the resolution of the case at hand." (quoting *Kosmyna v. Botsford Cmty. Hosp.*, 607 N.W.2d 134, 138 (Mich. Ct. App. 1999))).

Several rationales exist for requiring exhaustion of an available administrative remedy even in the absence of an explicit directive that this process be completed prior to the commencement of a judicial proceeding. Requiring initial resort to an administrative procedure in such situations can be understood as vindicating legislative intent to provide another avenue for resolving disputes, which might be frustrated if that mechanism could be routinely avoided. The exhaustion doctrine also recognizes and gives due respect to the autonomy of the executive and legislative branches, and can secure the benefit of agency expertise, mitigate damages, relieve burdens that might otherwise be imposed on the court system, and promote the development of a robust record conducive to meaningful judicial review.

*Hill RHF Hous. Partners, L.P. v. City of Los Angeles*, 500 P.3d 294, 303 (Cal. 2021) (citations omitted).

[32]   Although 4 GCA § 6221.1 does not contain any express command that available administrative procedures be engaged before relief may be sought in court, we find a requirement that CSC procedures be exhausted "would comport with the statutory scheme and advance the general purposes served by the exhaustion rule." *See id.* (citation omitted). There is no clear indication of legislative intent that 4 GCA § 6221.1 provides "a statutory exemption from our settled rule requiring exhaustion of administrative remedies." *See id.*; *Limtiaco*, 2007 Guam 10 ¶ 27. Requiring initial resort to the CSC procedure vindicates legislative intent to provide another avenue for resolving disputes, which might be frustrated if that mechanism could be routinely avoided. *See Hill RHF*, 500 P.3d at 303–04. We believe that requiring exhaustion in these cases also "recognizes and gives due respect to the autonomy of the executive and legislative branches," and "secure[s] the benefit of agency expertise, mitigate[s] damages, relieve[s] burdens that might otherwise be imposed on the court system, and promote[s] the development of a robust record conducive to meaningful judicial review." *Id.* at 303.

[33]   As discussed above, the Plaintiff Class failed to exhaust its administrative remedies. Although another statutory remedy may have applied, its failure to exhaust administrative

remedies before pursuing it bars the pay claim. *See Limtiaco*, 2007 Guam 10 ¶ 27. The trial court properly dismissed that claim.

### 5. Failure to exhaust administrative remedies bars declaratory judgment

[34]    The Second Amended Complaint requested a declaration that the regulations and statutes governing the pay of the Plaintiff Class be interpreted and applied under the Plaintiff Class's interpretation. Concluding sovereign immunity was not waived, Judge Iriarte's Decision and Order barred any declaratory relief. Appellants contend this was error.

[35]    In *Crain v. Government of Guam*, the District Court of Guam dismissed a complaint against the Government after finding sovereign immunity had not been waived. 97 F. Supp. 433, 434–35 (D. Guam 1951). The Ninth Circuit affirmed, noting the Government of Guam has sovereign immunity from suit for judgment declaring rights. *Crain v. Gov't of Guam*, 195 F.2d 414, 415 (9th Cir. 1952). The Ninth Circuit concluded that since the Government of Guam had sovereign immunity that had not been waived, no other contentions of the appellants, including one for declaratory relief, could be considered. *Id.* "[T]he doctrine of exhaustion of administrative remedies may not be circumvented by bringing . . . actions for declaratory relief." *Barrett-Anderson*, 2015 Guam 20 ¶ 24 (citation omitted).

[36]    The Plaintiff Class's declaratory relief action is plainly an attempt to circumvent exhaustion of administrative remedies. Even if sovereign immunity had been waived, the trial court's dismissal was proper.

### 6. Estoppel is an improper claim and is barred by sovereign immunity

[37]    The Plaintiff Class also seeks to estop the Governor and Government of Guam from declaring they need not pay double pay. In support of this argument, Appellants cite 6 GCA § 5106 and contend the Second Amended Complaint properly pleaded estoppel.

[38]     While the Plaintiff Class may have technically pleaded facts supporting each element of estoppel, the doctrine of equitable estoppel is available only as a "'shield' or defense." *Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 Guam 9 ¶ 24 (citation omitted).  Equitable estoppel is not purposed to "work a positive gain to a party, and it does not of itself create a new right, impose an obligation, or give rise to a cause of action; rather, it serves to prevent losses otherwise inescapable, to prevent an otherwise unjust result, and to preserve rights already acquired." *Operation and Effect of Equitable Estoppel*, 28 Am. Jur. 2d *Estoppel and Waiver* § 30 (Oct. 2023 Update) (footnotes omitted); *see, e.g.*, *Behnke v. State Farm Gen. Ins. Co.*, 127 Cal. Rptr. 3d 372, 387–88 (Ct. App. 2011) ("[A] stand-alone cause of action for equitable estoppel will not lie as a matter of law . . . ."); *Erickson v. Brown*, 2012 ND 43, ¶ 23, 813 N.W.2d 531, 537 ("[E]quitable estoppel is not an affirmative cause of action . . . .").

[39]     The Plaintiff Class is attempting to use the doctrine of equitable estoppel as a sword to establish a cause of action.  This is an improper use of the doctrine and therefore cannot be the basis for any claim.  Additionally, because estoppel is not a valid cause of action, Appellants cannot "point to a specific legislative waiver of sovereign immunity" allowing the Government to be sued under such a theory.  *See Ehlert*, 2019 Guam 27 ¶ 11.  The trial court properly dismissed this claim.

**B.  The Proper Government Spending Act Does Not Apply to CARES Act Funding**

[40]     In the Original Complaint, the Plaintiff Class argued violation of the Proper Government Spending Act, under 5 GCA § 7101 *et seq*. RA, tab 1 at 17-18 (Class Action Compl.). The Plaintiff Class alleged the Governor and DOA Director violated 10 GCA § 19803(c)(2) by spending CARES Act funds without proper authority. *Id.* at 18.  On appeal, Appellants maintain this argument, contending the Superior Court erred in dismissing the claim because the CARES Act

was not a specific grant for a specific program, and therefore reliance on *Wong v. Camina*, 2 Guam R. 132 (D. Guam 1978), was improper. Appellants also allege the Governor was restricted by 10 GCA § 19803 and that a ruling for the Government would contradict the Guam Legislature's authority over Section 30 funds. We disagree.

[41]     The Organic Act of Guam provides: "Appropriations, except as otherwise provided in this chapter, and except such appropriations as shall be made from time to time by the Congress of the United States, shall be made by the legislature." 48 U.S.C.A. § 1423j(a). This section of the Organic Act gives the Guam Legislature "plenary or absolute power over appropriations." *Santos v. Calvo*, D.C. Civ. No. 80-0223A, S.C. Civ. No. 663-80, 1982 WL 30790, at 3 (D. Guam App. Div. Aug. 11, 1982). But this plenary power applies only when dealing with a local appropriation—a federal appropriation is subject to the terms set by Congress.

[42]     In *Wong v. Camina*, the District Court of Guam analyzed the Guam Legislature's responsibility over a federally-funded grant purposed to establish a Guam Office of Consumer Services. The District Court explained:

> Congress has, in the Organic Act of Guam, retained the power to directly legislate over Guam and, specifically, to directly appropriate sums from the U.S. Treasury to Guam. Where such has occurred without any Congressional provision for local approval, once such appropriation has been made, it is available for local use notwithstanding any local law requiring reappropriation.

*Wong*, 2 Guam R. at 132. Considering the funding, the District Court concluded:

> Section 1423j of Title 48, United States Code is paramount to local legislation and provides that the United States Congress can make appropriations directly to the government of Guam. Where these appropriations or grants completely fund a specific purpose without the need of local funding, and where the appropriation or grant does not provide for local legislative control, there is no authority for the Guam Legislature to assume the responsibility for reappropriating these funds.

*Id.* at 133. The court determined the grant, under Public Law 94-385, was made to the Government of Guam for a specific purpose and funded that purpose without the need for local funding or control. *Id.*

[43]    Appellants argue the Superior Court erred in relying on *Wong*, asserting it is distinguishable from CARES Act funding. In *Wong*, the court concluded that the Guam Legislature does not have control over funds that: (1) have a specific purpose; (2) are fully federal (no local funding required); and (3) have no requirement to be under local control. *Id.*

[44]    In this case, when considering the criteria under *Wong*, requirements (2) and (3) above are not disputed and support the arguments made by the Governor and DOA Director. The CARES Act required no local funding and did not provide for any local legislative control. Instead, the CARES Act appropriated $150 billion "for making payments to States, Tribal governments, and units of local government," 42 U.S.C.A. § 801(a)(1), for: (1) necessary expenditures incurred because of the COVID-19 public health emergency, (2) that were not accounted for in the government's most recently approved budget, and (3) were incurred between March 1, 2020, and December 30, 2020, *id.* § 801(d). The CARES Act also tasked the Inspector General of the Department of the Treasury with "monitoring and oversight of the receipt, disbursement, and use of funds." *Id.* § 801(f)(1). The CARES Act was a direct appropriation to the Government of Guam, "providing that a State, local, or tribal government may use payments from the Fund only to cover previously unbudgeted costs of necessary expenditures incurred due to the COVID-19 public health emergency during the covered period." *Coronavirus Relief Fund for States, Tribal Governments, and Certain Eligible Local Governments*, 86 Fed. Reg. 4182, 4183 (Jan. 15, 2021).

[45]    For guidance, the Department of the Treasury provided a "nonexclusive" list of eligible expenditures. *Id.* at 4184. Appellants are correct in asserting the CARES Act is broader than

Public Law 94-385 § 205—the grant establishing the Guam Office of Consumer Services in *Wong*. *Compare* 42 U.S.C.A. § 801, *with* Pub. L. 94-385 § 205. Despite the moderate amount of discretion provided for under the CARES Act, however, a specific purpose is attached to the funds. Congress mandated CARES Act funds be used for expenditures "due to" COVID-19, and use of the funds was restricted to only one year. 42 U.S.C.A § 801(d). The Act also granted the Treasury the responsibility of auditing the use of the funds and creating a debt that must be repaid whenever funds were misspent, further suggesting the funds had a specific purpose. *See id.* § 801(f)(2). The specific purpose of the funds satisfies criterion (1) of *Wong*.

[46]     Because the funds satisfy all three requirements of *Wong*, it is not distinguishable as Appellants maintain, and there is no reason to depart from it here. The CARES Act funding was a federal appropriation for a specific purpose, outside the control of the Guam Legislature. Because the Legislature had no control over the funding, the Proper Government Spending Act is inapplicable. The Plaintiff Class has not stated a claim upon which relief may be granted.

[47]     Appellants also maintain that finding CARES Act funding to be untethered from Guam Legislature oversight "cannot stand, without eviscerating legislative control of section 30 funds." Appellants' Br. at 21. They contend this finding, together with *Wong* and 48 U.S.C.A. § 1423j(a), would mean the Governor could control Section 30 funds.[8] Contrary to the Plaintiff Class's allegations, control over Section 30 funds would not be affected by any decision about CARES Act funding. The General Fund, where Section 30 funds are contained, has no specific purpose and no restrictions. The General Fund exists "for the benefit and government of Guam in

---

[8] Title 48 U.S.C.A. § 1421h concerns the General Fund, in which all government revenues are deposited and from which appropriations are made. *Government of Guam Revenues*, The Guam Office of Finance and Budget, https://www.ofbguam.org/revenues (last visited Dec. 27, 2023). The General Fund contains Section 30 funds, which includes funds from federal sources. *Id.* Section 30 of the Organic Act requires all customs duties, Federal income taxes, quarantine, passport, immigration, and naturalization fees collected in Guam be "covered into the treasury of Guam and held in account for the government of Guam, and shall be expended for the benefit and government of Guam." 48 U.S.C.A. § 1421h.

accordance with the annual budgets." 48 U.S.C.A. § 1421h. Finding the CARES Act funding to be outside the control of the Guam Legislature is unrelated to how the Legislature appropriates the General Fund, including Section 30 funds, under the Organic Act.

**[48]** Finally, Appellants argue 10 GCA § 19803 restricts the expenses incurred during a public health emergency to $600,000.00 without the Guam Legislature's approval. Section 19803 allows the Governor to transfer funds from the General Fund upon the declaration of a public health emergency; however, the aggregate amount of expenses cannot exceed $600,000.00. 10 GCA § 19803(a), (c)(2) (2005). This argument is unavailing. Having found CARES Act funds to be a federal appropriation for a specific purpose, outside the control of the Guam Legislature and not part of the General Fund, 10 GCA § 19803 is inapplicable.

## V. CONCLUSION

**[49]** Appellants, the Plaintiff Class, failed to exhaust administrative remedies. As a matter of law, this failure is not excused on the grounds of futility. The Superior Court properly dismissed the Plaintiff Class's claims for double pay and declaratory judgment. Estoppel is not a valid cause of action, and dismissal was also proper. Finally, the CARES Act was a federal appropriation, outside the control of the Guam Legislature, and therefore the Proper Government Spending Act does not apply. We **AFFIRM**.

/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
ROBERT J. TORRES
Chief Justice